## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TOD CURTIS, individually and as beneficiary, FIRST UNITED TRUST COMPANY, as Trustee under Trust No. 10510, and ELTO RESTAURANT INC., an Illinois corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08 cv 03527 |
| IRVANA K. WILKS, Village of Mount Prospect Mayor and Local Liquor Control Commissioner, MICHAEL E. JANONIS, Village of Mount Prospect Manager, WILLIAM COONEY, Village of Mount Prospect Economic Director, WILLIAM SCHROEDER, Village of Mount Prospect Building Commissioner, ROBERT ROELS, Village of Mount Prospect Environmental Health Manager, FRANK KRUPA, Village of Mount Prospect Environmental Health Inspector, OZ DEVELOPMENT, LLC, and the VILLAGE OF MOUNT PROSPECT, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Guzman  Magistrate Nolan |
| Defendants. | ) | |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO CERTAIN DEFENDANTS' MOTION REQUESTING THAT THE COURT ABSTAIN FROM EXERCISING JURISDICTION OVER THE COMPLAINT[1]

Plaintiffs, Tod Curtis ("Curtis"), individually and as a beneficiary, First United Trust Company, as Trustee under Trust No. 10510, and Elto Restaurant Inc., an Illinois Corporation ("Elto"), by their counsel Barnes & Thornburg LLP, hereby respond in opposition to *Defendants Wilks, Janonis, Cooney, Schroeder, Roels, Krupa and the Village of Mount Prospect's Motion Requesting That the Court Abstain From Exercising Jurisdiction Over the Complaint* ("Defendants' Motion" or the "Motion"). As their Response, Plaintiffs state as follows:

---

[1] The sole defendant not joining in the Motion to Abstain is Oz Development, LLC, which filed its answer to Plaintiffs' Complaint on July 11, 2008.

## I.    Introduction

Defendants' Motion asks the Court to abstain from asserting jurisdiction in this matter on a basis—*Colorado River* abstention—designed for situations in which a state court litigant files a federal lawsuit alleging the same claims raised in the state court litigation.  Defendants argue that ongoing state court litigation between the Village of Mount Prospect (but none of the other Defendants) and Plaintiffs regarding alleged building ordinance violations and a condemnation proceeding are so similar to the instant lawsuit that the Court should abstain from asserting its jurisdiction over Plaintiffs' claims, which allege civil RICO violations and violations of Plaintiffs' constitutional and civil rights.  The state court proceedings, however, are not parallel and cannot justify abstention.

Plaintiffs' claims against Defendants began on March 31, 2008, when Plaintiffs filed a Complaint in Illinois state court asserting claims for civil RICO violations, equal protection and due process violations, and violations of 42 U.S.C. § 1983.  *See* Defs'. Mot. Ex. 3.  After Plaintiffs obtained new counsel, however, they filed a Motion to Voluntarily Dismiss the Complaint so that they could file their claims in federal court—a more appropriate forum for the federal claims.  After a hearing on the Motion to Voluntarily Dismiss to which Defendants actively objected, the state court on June 19, 2008 agreed with Plaintiffs that their RICO and civil rights claims should be filed in a federal court and allowed the Complaint to be voluntarily dismissed.  Defs'. Mot. Ex. 12.  On the same day as that hearing, Plaintiffs' filed the Complaint that is at issue in this case with almost the same claims that were raised in the state court Complaint.[2]  Defs'. Mot. Ex. 13.  Obviously, if Plaintiffs had not voluntarily dismissed its state court Complaint, there would be a parallel action to this case that would justify abstention, as

---

[2] Specifically, Plaintiffs' present claims allege violations of the RICO Act under 18 U.S.C. §§ 1962(c) and (d); equal protection violations; violations of 42 U.S.C. § 1983; and violations of 42 U.S.C. § 1985(3).  *See* Complaint for Relief of Civil Rights and RICO Violations, attached to Defendants' Motion as Exhibit 13.

both cases would involve the same parties and claims. But that is not the case, regardless of how hard Defendants strain to equate a condemnation case and building ordinance case with this RICO and civil rights case.

Defendants argue that the Village's cases against Plaintiffs in state court that seek to condemn Plaintiffs' property and that assert building code violations are parallel proceedings under abstention principles. That argument is wrong. A judgment in either of those cases will not have any effect on the proceedings in this case. This Court is not charged with determining any issues related to whether Plaintiffs' property should be condemned and taken by the Village or whether Plaintiffs have committed any building code violations, thus, they are not parallel to the instant case and do not involve the same claims. Even Defendants own actions demonstrate that the current action is not parallel to the state court proceedings, as Defendants never moved in state court to dismiss Plaintiffs' previous RICO Complaint on the basis that "there is another action pending between the same parties for the same cause," which is available to a defendant in Illinois court. 735 ILCS 5/2-619(a)(3). Surely if Defendants believed Plaintiffs' state court RICO Complaint was closely related to the condemnation and building ordinance cases (as they argue in their Motion), they would have moved to dismiss the state court RICO action under Section 619(a)(3). They did not because they are not the same cases. The state court condemnation and building code violation cases are independent of this case, and are not duplicative or parallel proceedings that justify abstention. The Court should deny Defendants' Motion.

## II.    Argument

### A.    *Colorado River* Abstention is an Extraordinary and Narrow Remedy.

*Colorado River* abstention is an extraordinary and rarely granted remedy. Federal courts have a "virtually unflagging obligation…to exercise the jurisdiction given them," and ordinarily,

there exists no bar to contemporaneous, parallel litigation concerning the same matter in both state and federal court. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *England v. Medical Examiners*, 375 U.S. 411, 415 (1964); *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005) (citing *AXA Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003)); *Christy-Main, Inc. v. Ouellette*, No. 1:06-cv-1338, 2007 U.S. Dist. LEXIS 82934, at *12 (S.D. Ind. Nov. 6, 2007).[3] It is only under "exceptional circumstances" that a federal court may decline its "heavy obligation" to exercise its jurisdiction and stay a lawsuit under the *Colorado River* abstention doctrine. *AAR Int'l, Inc. v. Nimelias Enters S.A.*, 250 F.3d 510, 517-18 (7th Cir. 2001); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 710 (1996) ("exceptional circumstances" required for *Colorado River* abstention); *see also Colorado River*, 424 U.S. at 813-14 (abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy property before it.")    A district court evaluating a request for *Colorado River* abstention should not seek "to find some substantial reason for the *exercise* of federal jurisdiction," but should determine instead whether "the clearest of justifications" exists "to justify the *surrender* of that jurisdiction." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (emphasis in original).

Further, *Colorado River* abstention "may be appropriate only if *truly duplicative* state proceedings are also underway." *Spillane v. Commonwealth Edison Co.*, 291 F. Supp. 3d 728, 735 (N.D. Ill. 2003) (emphasis added); *Morton Coll. Bd. of Trs. of Ill. Community Coll. Dist. No. 527 v. Town of Cicero*, 18 F. Supp. 2d 921, 929 (N.D. Ill. 1998); *see also Baskin v. Bath T'ship Bd. of Zoning Appeals*, 15 F.3d 569, 571 (6th Cir. 1994).   Even in the unlikely circumstance (which is not present here) that a truly duplicative state proceeding was underway, a party

---

[3] Copies of all unpublished cases cited in this Response are attached as Group Exhibit A.

seeking abstention must also demonstrate exceptional circumstances. In attempting to do so, the party seeking abstention—in this case, Defendants—has the burden to defeat the general presumption against abstention. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 25-26 (1983); *AXA Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (Seventh Circuit recognizes a presumption against abstention) (citing *Sverdrup Corp. v. Edwardsville Cmty Unit Sch. Dist. No. 7*, 125 F.3d 546, 549-50 (7th Cir. 1997) (same)). The Supreme Court has repeatedly admonished that only the "clearest of justifications…can suffice under *Colorado River* to justify the surrender" of a federal court's jurisdiction. *Moses Cone*, 460 U.S. at 25-26 (internal quotations omitted); *Spillane v. Commonwealth Edison Co.*, 291 F. Supp. 3d 728, 735 (N.D. Ill. 2003); *see Colorado River*, 424 U.S. at 818-19.

In the instant case, Defendants completely fail to meet their heavy burden to demonstrate duplicative or parallel state and federal proceedings or that there are exceptional circumstances that justify abstention.

### B. The State Court Litigation is Not Parallel to the Instant Action.

First, the Court should deny Defendant's Motion because the state proceedings between Plaintiffs and the Village of Mount Prospect in the Circuit Court of Cook County (the "State Court Litigation") are not parallel with this case. The Complaint in this case asserts claims that Defendants were involved a criminal enterprise by representatives of the Village of Mount Prospect and Oz Development LLC that is aimed at ousting Plaintiffs from their property and depriving them of their property and civil rights. Defs.' Mot. Ex. 13. The enterprise has been ongoing for almost a decade, and has involved numerous acts by different Village representatives with the ultimate goal of driving Plaintiffs from Mount Prospect. *Id.* The actions by Defendants show that they have violated the RICO Act, 42 U.S.C. §§ 1983 and 1985, and Plaintiffs'

constitutional rights to due process, equal protection, just compensation for the taking of property, and freedom of speech. *Id.*

As to the two state court actions, on September 20, 2007, the Village filed a Complaint for Condemnation against Plaintiffs seeking to take Plaintiffs' property in Mount Prospect by eminent domain. *See* Defs.' Mot. Ex. 10. Plaintiffs responded with a Traverse and Motion to Dismiss on the basis that the Village did not make a good faith attempt to agree on just compensation to be paid for the taking of Plaintiffs' property, the Village is not acquiring Plaintiffs' property for a public purpose, and that the Village's taking is excessive. *See* Defs.' Mot. Ex. 14. As to the building code claims, Defendants have alleged numerous violations of the Building, Property Maintenance, Fire Prevention, and Health Code, and that Plaintiffs' restaurant should be closed if the issues were not abated within seven days. *See* Defs.' Mot. Ex. 5.[4] The parties have negotiated an agreed order that addresses the alleged ordinance violations and allows Plaintiffs to operate their restaurant, which is currently open for business. *See* June 26, 2008 Order, attached as Exhibit B.

A state action is "parallel" to a federal action where "substantially the same parties are litigating substantially the same issues simultaneously" in both fora. *Finova Capital Corp. v. Ryan Helicopters U.S.A. Inc.*, 180 F.3d 896, 898 (7th Cir. 1999) (internal quotations omitted). The two actions are sufficiently similar to be considered parallel only if "there is a substantial likelihood that the [state] litigation will dispose of all claims presented in the federal case." *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700-01 (7th Cir. 1992)

---

[4]  Defendants assert that a "hearing on the Village's complaint for injunctive relief…will consider the reasonableness of the inspections at YOTI that Curtis' federal court complaint alleges were initiated for illegal and unconstitutional ends." Defs.' Mot. p. 9. This statement is not true. Instead, the state court would determine whether Plaintiffs were in violation of Village ordinances, not whether the Village's actions were reasonable. In the instant case, regardless of whether Plaintiffs were in violation of Village ordinances, Defendants used numerous inspections of Plaintiffs' property as a tactic for harassing Plaintiffs, among many other illicit acts, with the ultimate goal of pushing Plaintiffs out of Mount Prospect.

(internal quotations omitted); *see also Finova Capital*, 180 F.3d at 898 (concluding suits were parallel because "the granting of relief in one forum would dispose of the claims raised in the other). If the state and federal actions are not parallel, then the *Colorado River* abstention doctrine is inapplicable. *TruServ Corp.*, 419 F.3d at 592; *AAR Int'l*, 250 F.3d at 518. The decision to invoke *Colorado River* abstention necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case. *Moses H. Cone*, 460 U.S. at 28; *see also AAR Int'l*, 250 F.2d at 518, 520 (quoting *Moses H. Cone*, 460 U.S. at 28) (internal quotations omitted) (If there is "any substantial doubt that the [state] litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties," then it would be a "serious abuse of discretion to abstain under *Colorado River*...")[5]

Here, there is much more than a substantial doubt that the resolution of the State Court Litigation will not resolve the issues alleged in this action because it is certain that those issues will *not be resolved*, one way or the other, in the State Court Litigation. Here, Plaintiffs allege claims of an unlawful enterprise under the civil RICO statute and multiple civil rights violations. Those claims will focus on Defendants' acts in concert with one another over the last decade that violate the RICO statute and violate Plaintiffs' constitutional rights, as alleged in the Complaint. Those issues are independent of the fair market value of Plaintiffs' property and whether the Village's offer to purchase the property lacked good faith (the issues in the state court condemnation proceeding) and whether ordinance violations exist in Plaintiffs' restaurant on that property (the central issue in the state action alleging building code violations). *See Defs.' Mot.*, Exs. 4-6, 10. Even Plaintiffs' allegations in the State Court Litigation that the Village of Mount Prospect undertook condemnation proceedings in bad faith will not dispose of or definitively

---

[5] Further, any doubt whether the state and federal actions are parallel should be resolved in favor of exercising jurisdiction. *AAR Int'l*, 250 F.3d at 520.

prove the RICO allegations, as a successful RICO claim requires proof of specific elements separate and apart from bad faith in a condemnation case. *Compare Jennings v. Auto Meter Prods., Inc.* 495 F.3d 466, 472 (7th Cir. 2007) (To state a claim under RICO, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."); *with Department of Transportation v. Brownfield*, 582 N.E.2d 209, 211 (Ill. App. Ct. 1991) (condemnor's offer may be so woefully inadequate as to constitute bad faith). That the federal and state claims are wholly independent from each other is evidenced by the fact that, even if the state claims were resolved by a judgment, that resolution would not resolve the claims asserted in this lawsuit. Based on this fact alone, the actions are not parallel, and the *Colorado River* doctrine does not apply. *See National Council on Compensation Ins., Inc. v. American Int'l Grp., Inc.*, No. 07 C 2898, 2007 U.S. Dist. LEXIS 59707, at *10 (N.D. Ill. Aug. 6, 2007) (state and federal lawsuits at issue were not parallel, in part, because the federal suit involved a federal RICO claim, which would not be disposed of in the state court action); *see also AAR Int'l, Inc. v. Nimielias Enters. S.A.*, 250 F.3d 510, 520 (7th Cir. 2001) (federal and foreign action not parallel because foreign action would not dispose of all of the claims presented in the federal suit); *Pelfresne v. Stephens*, 35 F. Supp. 2d 1064, 1073 (N.D. Ill. 1999) (abstention inappropriate where, unlike state case, plaintiffs' federal case was not an *in rem* property action, but rather a RICO claim).

Defendants may argue that certain aspects of the State Court Litigation are somehow related this litigation. But, even if that were true, the above case law demonstrates that such an argument is insufficient to invoke abstention. *Id.* The only way in which a parallel proceeding could be pending in state court with the instant case would be if Plaintiffs did not voluntarily dismiss their prior state court Complaint for RICO and civil rights claims. The very purpose of that dismissal, however, was that Plaintiffs could litigate federal claims in a federal forum, and

avoid parallel proceedings.

Defendants cite several decisions in support of their request that the Court abstain from asserting jurisdiction. None of these decisions support abstention here, and instead demonstrate the differences between a proper case for abstention, on one hand, and this case on the other. Defendants first cite *Caminiti and Iatarolo, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992), which was a case where the relief requested in the state court proceeding would have disposed of all issues in dispute among the parties. *Id.* at 701-02 ("virtual certainty" that "the state litigation will dispose of all claims presented in the federal case.") The resolution of the State Court Litigation would not dispose of all claims presented in this lawsuit—to the contrary, all of Plaintiffs' claims here would remain unresolved even in the event of complete resolution of the State Court Litigation. Thus, *Caminiti* is easily distinguished from this case. Equally distinguishable are *Tyrer v. City of South Beloit, Illinois*, 456 F.3d 744, 750, 752-53 (7th Cir. 2006) (abstention appropriate where the later federal case was filed four years later than the state case, raised the identical due process claim, and alleged identical facts to the original state claim); *Clark v. Lacy*, 376 F.3d 682, 686-87 (7th Cir. 2004) (both state and later-filed federal actions were shareholder derivative suits centered on whether the corporation's officers and directors breached their fiduciary duties in connection with the company's entry in a certain credit card market); *LaDuke v. Burlington Northern R.R. Co.*, 879 F.2d 1556, 1559 (7th Cir. 1989) (parties and claims in the later action were "identical in all respects to those in the pending state action."); and *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988) (abstention appropriate where 32 of 39 of complaint paragraphs were "verbatim" in the later-filed federal complaint).

In sum, this case and the State Court Litigation are not parallel, as demonstrated by the fact that a resolution of the State Court Litigation would not resolve Plaintiffs' claims here. As a

result, the *Colorado River* doctrine is inapplicable, and the Court should deny Defendants' Motion. *See TruServ Corp.*, 419 F.3d at 592 (*Colorado River* doctrine inapplicable where state and federal actions are not parallel); *AAR Int'l*, 250 F.3d at 518 (same).

### C. Abstention is Inappropriate Because Exceptional Circumstances Do Not Exist to Justify Staying the Instant Lawsuit.

Standing alone, the fact that the State Court Litigation and this lawsuit are not parallel dooms the Motion. But even if it were otherwise, abstention still would not be warranted here because the exceptional circumstances necessary for abstention do not exist. The Seventh Circuit has articulated the following ten factors that a district court may consider in deciding whether "exceptional circumstances" exist that would justify deference to that state courts under *Colorado River*: (1) whether the state has assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) the source of governing law; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *LaDuke v. Burlington N.R.R.*, 879 F.2d 1556, 1559 (7th Cir. 1989) (citations omitted). No one factor is necessarily determinative but rather, "a carefully considered judgment taking into account both the obligation to exercise federal jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818-19. The balance of these factors weighs heavily against abstention in this case.

1.    *Has the state asserted jurisdiction over property?*

While it is true that the state court has assumed jurisdiction over Plaintiffs' property in the condemnation case, this factor carries very little weight for the abstention analysis, as

"plaintiffs' federal case is not an *in rem* property action; it is a RICO action for money damages." *Pelfresne*, 35 F. Supp. 2d at 1073 (Court declined to abstain where state condemnation and federal RICO proceedings were pending concurrently.) Considering all the factors below and the slight relevance of this factor, abstention should be denied.

2.    *Inconvenience of federal forum*

Likewise, the second factor—inconvenience of the federal forum—weighs against abstention as well. The federal forum is not inconvenient for the parties, as each party is domiciled within this District, and its attorneys are licensed to practice before this Court. The evidence and witnesses necessary for a trial of this case are located, by and large, within this District in Mount Prospect. In fact, the state and federal courthouses are only several blocks away from each other. The federal forum does not cause inconvenience to any of the parties.

3.    *The desirability of avoiding piecemeal litigation*

A district court may also consider the desirability of avoiding piecemeal litigation. While declining to abstain would mean that an additional lawsuit would continue between Plaintiffs and the Village of Mount Prospect, there would be no piecemeal litigation in this case. A judgment in either the state condemnation or the building code case would not resolve any issues in the instant case. This Court cannot, and is not being asked to, condemn Plaintiffs' property and cannot adjudicate building ordinance violations, so nothing about the State Court Litigation would be part of a piecemeal process of resolving similar claims in this Court. Moreover, piecemeal litigation, in and of itself, can hardly be called "exceptional circumstances." *See Evans Transp. Co. v. Scullin Steel Co.*, 693 F.2d 715, 717 (7th Cir. 1982) ("It is not enough, to justify abstention, that a failure to stay the federal suit may result in judicial diseconomy—in having two lawsuits instead of one.") *See also Enfra LLC v. Caporale*, No. 02 C 8856, 2003 U.S. Dist. LEXIS 9089 at *12 (N.D. Ill. May 30, 2003) (abstention inappropriate where,

although state and federal suits "do overlap and involve similar issues," "a complete resolution of the state action will not necessarily dispose of plaintiffs' civil RICO claim.") This factor weighs against abstention.

4.    *Order in which jurisdiction was obtained by the concurrent fora*

The fourth factor might appear to weigh in favor of abstention because the State Court Litigation did precede this lawsuit, filed on June 19, 2008, by few months. When considered in light of the seventh factor, which examines the relative progress of the two suits, however, "this relatively short time differential carries little weight" for the purposes of the *Colorado River* analysis. *Enfra, LLC*, 2003 U.S. Dist. LEXIS at *14. *See also Finova Capital Corp.*, 180 F.3d at 900 (fact that state action was filed four months before federal action did not support abstention). Thus, this fourth factor does not truly weigh in favor of abstention.[6]

5.    *The source of the governing law*

Fifth, the existence of a federal question, as exists with each of Plaintiffs' claims, weighs against abstention. *Sverdrup Corp. v. Edwardsville Cmty. Unit Sch. Dist. No. 7*, 125 F.3d 546, 549 (7th Cir. 1997) ('[p]articular weight must be given to the presence of a federal question in the case; that factor weights heavily against abstention.") In fact, it was because Plaintiffs' claims derive from federal law that Plaintiffs decided to file this lawsuit in federal court.

6.    *Adequacy of the state court action to protect the federal plaintiff's rights*

It is true that an Illinois state court, which has broad subject matter jurisdiction, may

---

[6] Defendants suggest that the filing of this case is nothing more than forum shopping. In truth, Plaintiffs filed this case shortly after obtaining new counsel and deciding that Plaintiffs' claims—which are all federal in nature—would be most appropriately brought in federal court. Towards that end, Plaintiffs sought and received a voluntary dismissal of its similar claims in state court over Defendants' objection. *See* Defs' Mot. Exs. 11 & 12. In granting Plaintiffs' motion to voluntarily dismiss, Judge Richard Billik, who is presiding over the building code case, acknowledged that the federal courts are a more appropriate forum for Plaintiffs' claims here. Moreover, Defendants argument of forum shopping is dubious in light of the fact that this Court is located only several blocks from the state court, and it is unclear what sort of unfair advantage Defendants believe Plaintiffs may gain by being before this Court.

preside over an action alleging the federal claims made by Plaintiffs. Nevertheless, those claims contemplate a federal forum, which is why Congress has vested subject matter jurisdiction for such claims in the district courts. Thus, what Plaintiffs would lose if this lawsuit were stayed is the opportunity to litigate in a federal forum—an opportunity to which they are entitled under 28 U.S.C. § 1331 in the absence of extraordinary circumstances. *See AXA Corporate Solutions*, 347 F.3d at 272.

7.     *The relative progress of state and federal proceedings*

Although the State Court Litigation began prior to this lawsuit, the State Court Litigation has not proceeded much beyond this lawsuit. In the state action alleging ordinance violations, Plaintiffs (as the defendants in that case) filed their answer earlier this month. Although Plaintiffs and the Village of Mount Prospect have spent significant time negotiating a settlement, they have not conducted discovery or otherwise furthered the progress of the case towards trial, which will decide only whether a preliminary injunction should ensue to close the restaurant. In the state court condemnation case, the parties have only begun to exchange discovery requests and responses. Thus, although discovery has begun in the State Court Litigation, that litigation is not nearing resolution, nor have the parties filed any pending dispositive motions. *See Enfra LLC*, 2003 U.S. Dist. LEXIS at * 13. This absence of any progress in the State Court Litigation beyond that in this lawsuit does not favor abstention. *Id.*

Again, in arguing that the Court should abstain from asserting its jurisdiction, Defendants cite easily distinguishable authority. Defs.' Mot. at 14. In *Lumen Construction v. Brant Construction Co., Inc.*, 780 F.2d 691, 697 (7th Cir. 1986), the Seventh Circuit affirmed the lower court's decision to abstain under *Colorado River*, in part because the previous state litigation had progressed further than the newer federal case, and because of a "number of rulings by the [state] court," including the denial of a motion for summary judgment. This is a far cry from the State

Court Litigation, in which Defendants have only just filed their answer in one matter, and have only begun to exchange discovery in the other. As a result, *Lumen Constr.* represents a situation in which earlier-filed state court litigation had progressed considerably further than federal court litigation. As set forth above, that is not the case here.

8.    *The presence or absence of concurrent jurisdiction*

Here, concurrent jurisdiction does exist within this Court and the Circuit Court of Cook County. Nevertheless, when compared to the weight of those factors disfavoring abstention and the extraordinary nature of abstention, this concurrent jurisdiction is not an adequate basis for *Colorado River* abstention.

9.    *The availability of removal of the state claim*

The ninth factor, the availability of removal, weighs against abstention. The State Court Litigation, which is based on Illinois common law and involves only parties domiciled in Illinois, is not removable to federal court. As a result, if the instant case were stayed, Plaintiffs will be precluded from adjudicating their claims in a federal forum. *See National Council on Compensation Ins., Inc.*, 2007 U.S. Dist. LEXIS 59707 at *16 (defendants failed to prove "exceptional circumstances" sufficient for *Colorado River* abstention in federal case alleging civil RICO claim); *see also, e.g., J&A Sales and Mktg., Inc. v. J.R. Wood, Inc.*, No. 01 C 6749, 2002 U.S. Dist. LEXIS 6979, at *13 (N.D. Ill. Apr. 19, 2002).

10.    *The vexatious or contrived nature of the federal claim*

Finally, the Court may consider the "vexatious or contrived nature of the federal claim." Although Defendants argue that the complaint here is "contrived," they provide no legal or factual basis for this conclusion. Defs.' Mot. at 15. Plaintiffs have plead facts sufficient to demonstrate each of the required elements of their RICO claim, and Defendants' Motion does not dispute that fact. *Id.* at 15-16. That is also the case for Plaintiffs' claims for equal protection

violations and violations of 42 U.S.C. §§ 1983 and 1985(3). Thus, Defendants have not demonstrated in the least that the Complaint is contrived or otherwise vexatious.

Furthermore, Defendants' filing of the Motion in and of itself belies their allegation that this lawsuit is contrived. If Defendants believed that this lawsuit were contrived, it would seem more appropriate for Defendants to seek a dismissal under Rule 12 of the Federal Rules of Civil Procedure than to ask the Court to abstain, which allows the Court to later assert its jurisdiction again after the resolution of the State Court Litigation. In any event, Plaintiffs' allegations are well plead and not in any way "vexatious or contrived," which weighs against abstention.

In sum, the ten factors for the Court's consideration of whether exceptional circumstances exist under *Colorado River* weigh heavily against abstention in this matter. In the absence of parallel litigation and exceptional circumstances, abstention would be inappropriate under *Colorado River*. The Court should deny the Motion.

## III.    Conclusion

For the reasons stated above, the Court should deny Defendants' Motion to Abstain.

> **TOD CURTIS, individually and as beneficiary, FIRST UNITED TRUST COMPANY, as Trustee under Trust No. 10510, and ELTO RESTAURANT INC., an Illinois corporation,**
>
>
> By:  s/ William M. McErlean
>      One of Their Attorneys

William M. McErlean
David T. Ballard
Theodore J. Koerth
Barnes & Thornburg LLP
One N. Wacker Drive
Suite 4400
Chicago, IL 60606
(312) 357-1313

CHDS01 DTB 480952v2

# EXHIBIT A

LEXSEE 2007 U.S. DIST. LEXIS 82934

**CHRISTY-MAIN, INC., Plaintiff, vs. JAN OUELLETTE, Defendant.**

**1:06-cv-1338-JDT-WTL**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION**

*2007 U.S. Dist. LEXIS 82934*

**November 6, 2007, Decided**
**November 6, 2007, Filed**

**COUNSEL:** [*1] For CHRISTY-MAIN, INC., Plaintiff: David J. Carr, Margaret Dewey Wielenberg, Paul C. Sweeney, ICE MILLER LLP, Indianapolis, IN.

For JAN OUELLETTE, Defendant: Erin A. Clancy, KIGHTLINGER & GRAY, Indianapolis, IN.

**JUDGES:** John Daniel Tinder, Judge.

**OPINION BY:** John Daniel Tinder

**OPINION**

**ENTRY ON MOTION TO STAY ALL DEADLINES PENDING TERMINATION OF THE AUTOMATIC STAY IMPOSED BY BANKRUPTCY**

> 1  This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

Plaintiff Christy-Main, Inc. ("Christy-Main"), a Georgia corporation, [2] filed this action on September 8, 2006, against Defendant Jan Ouellette, an Indiana resident, seeking damages pursuant to a variety of claims. Christy-Main sells logoed corporate apparel and employed Ms. Ouellette's husband, Mike Ouellette, as Vice President of Sales until May 1, 2006. Christy-Main seeks to hold Ms. Ouellette responsible for her role, in collaboration with Mr. Ouellette, in the formation and operation of Image Apparel Solutions, Inc. ("Image Apparel Solutions"), an Indiana corporation that also sells logoed corporate apparel. Prior to initiating this action, [*2] Christy-Main had filed suit against both Mr. Ouellette and Image Apparel Solutions in Georgia state court (the "Georgia Litigation"), seeking damages and injunctive

relief pursuant to a variety of similar claims. Christy-Main was unsuccessful in attempting to join Ms. Ouellette as a defendant in the Georgia Litigation because the state court lacked jurisdiction over her, and, therefore, Christy-Main brought this federal action in Indiana against Ms. Ouellette. Several months later, on April 3, 2007, both Mr. Ouellette and Image Apparel Solutions filed for bankruptcy in federal court in Indiana (the "Bankruptcy Litigation"), resulting in the automatic stay of the Georgia Litigation pursuant to *Section 362 of the Bankruptcy Code*. On June 1, 2007, Christy-Main filed motions in the Bankruptcy Court seeking relief from the automatic stay with respect to both Image Apparel Solutions and Mr. Ouellette so that Christy-Main could proceed with the Georgia Litigation. Shortly thereafter, on June 15, 2007, Christy-Main filed a motion seeking a stay of all deadlines in this matter until either relief from the automatic stay is granted or the Bankruptcy Litigation is completed, resulting in termination [*3] of the automatic stay. Ms. Ouellette has filed a brief in opposition to this motion, and Christy-Main has filed a reply brief. The motion is therefore ripe for review, and the court now rules as follows.

> 2  Georgia is both Christy-Main's state of incorporation and principal place of business. (Compl. P 1.)

**I. BACKGROUND**

Ms. Ouellette's husband, Mike Ouellette, was employed by Christy-Main for several years and served as Vice President of Sales immediately prior to the termination of his employment on May 1, 2006. (Pl.'s Br. Supp. Mot. Stay 2.) On April 25, 2000, Mr. Ouellette executed an employment agreement with Christy-Main. (Compl. PP 7-9.) That agreement included: (1) a non-compete provision prohibiting Mr. Ouellette from working for one of Christy-Main's competitors in the uniform/garment

rental/sales business or soliciting Christy-Main's customers for such a competitor; and (2) a non-disclosure provision prohibiting Mr. Ouellette from disclosing any confidential or proprietary information of Christy-Main. (*Id.*) The agreement specified that these restrictions were to be effective both during the course of Mr. Ouellette's employment and for two years following termination of his employment [*4] with Christy-Main. (*Id.*)

On November 22, 2004, Ms. Ouellette incorporated Image Apparel Solutions, Inc. ("Image Apparel Solutions") in Indiana and became President of the corporation. (Pl.'s Br. Supp. Mot. Stay 2; Def.'s Br. Opp'n 1-2.) Christy-Main asserts that its corporate slogan is also "Image Apparel Solutions," but Ms. Ouellette disputes that assertion. (Compl. P 1; Answer P 1.) In both this action and the Georgia Litigation, Christy-Main's claims depend upon its contention that the Ouellettes, in operating Image Apparel Solutions, used Christy-Main's confidential customer list to sell logoed corporate apparel to Christy-Main's customers. Christy-Main contends that the Ouellettes selected and used the "Image Apparel Solutions" name in order to deceive Christy-Main's customers, leading them to believe that they were still doing business with Christy-Main. (Pl.s' Br. Supp. Mot. Stay 2.) For example, Christy-Main contends that Mr. Ouellette deceived customers through the use of an email signature block that read: "Christy & Main Inc. Image Apparel Solutions, Inc." (*Id.*) Christy-Main learned of the Ouellettes' activities regarding Image Apparel Solutions in April 2006, after noticing [*5] that Mr. Ouellette's sales were down approximately $ 173,000 in comparison to April 2005. (*Id.*)

Shortly thereafter, on April 28, 2006, Christy-Main fired Mr. Ouellette and initiated the Georgia Litigation against him, seeking injunctive relief and damages. (Pl.'s Br. Supp. Mot. Stay 2; Ex. A Part 1 Supp. Mot. Stay 2.) Christy-Main then filed an amended complaint on May 26, 2006, adding Image Apparel Solutions and Jan Ouellette as defendants in the Georgia Litigation. (Pl.'s Br. Supp. Mot. Stay 2; Ex. A Part 2 Supp. Mot. Stay 23-25.) The amended complaint incorporated all the pending claims against Mr. Ouellette against Image Apparel Solutions and Ms. Ouellette, and also added a claim of fraud against both of the new defendants. (Ex. A Part 2 Supp. Mot. Stay 25-30.) Christy-Main's amended complaint also included a corporate veil-piercing claim against Ms. Ouellette, arguing that Image Apparel Solutions was a "mere instrumentality" for the transaction of Ms. Ouellette's affairs and that, therefore, she should be personally liable for the entire amount of Image Apparel Solution's liability to Christy-Main. (*Id.*) Image Apparel Solutions remains as a defendant in the Georgia Litigation, [*6] but the court lacked personal jurisdiction over Ms. Ouellette, and she declined to consent to jurisdic-

tion; therefore, she is no longer a defendant to that action. (Pl.'s Br. Supp. Mot. Stay 2; Def.'s Br. Opp'n 2.)

Christy-Main's inability to add Ms. Ouellette as a defendant in the Georgia Litigation did not end Ms. Ouellette's involvement in the litigation arising from the Ouellettes' activities regarding Image Apparel Solutions; Christy-Main opted to pursue its claims against Ms. Ouellette by filing the present action in this court on September 8, 2006. Christy-Main seeks compensatory damages, punitive damages, and attorneys' fees and litigation expenses from Ms. Ouellette pursuant to claims of tortious interference with business relations, misappropriation of trade secrets, money had and received, unjust enrichment, federal unfair competition, common law and statutory unfair competition, deceptive trade practices, and fraud. (Compl. 1-11.) In addition, Christy-Main included a corporate veil-piercing claim in the present action, arguing that Ms. Ouellette should be found "individually liable to [Christy-Main] for the entire amount for which Image Apparel Solutions, Inc. is held liable [*7] to [Christy-Main]." (*Id.* P 67.)

In support of its claims, Christy-Main contends that Ms. Ouellette actively participated in the day-to-day operations of Image Apparel Solutions. For example, in support of its claim for tortious interference with business relations, Christy-Main contends that Ms. Ouellette "participated in the selling of goods through Image Apparel Solutions, Inc. to [Christy-Main's] customers" in an attempt to interfere with Christy-Main's business relations and "with intent to injure [Christy-Main]." (*Id.* PP 22-25.) In support of its claim for misappropriation of trade secrets, Christy-Main contends that Ms. Ouellette is "utilizing and misappropriating" Christy-Main's trade secret information with "reason to know that she had a duty to avoid" such misappropriation. (*Id.* PP 32-34.) Christy-Main similarly alleges, in support of its other claims, that Ms. Ouellette participated in the operations of Image Apparel Solutions, wrongfully deceiving Christy-Main's customers by leading them to believe that they were still doing business with Christy-Main, all to the detriment of Christy-Main. (*Id.* PP 36-38, 40-42, 45, 47-49, 51, 55-57, 59, 61.)

Ms. Ouellette offers a markedly [*8] different description of her role with Image Apparel Solutions, contending that she was merely a figurehead with little responsibility in handling the corporation's affairs. According to Ms. Ouellette, she did not "actively solicit sales, advertise, sell products, or purchase products on behalf of Image Apparel Solutions." (Def.'s Br. Opp'n 2.) She contends that Mr. Ouellette was responsible for managing all of the corporation's operations, and that her activities were limited to her title as President and "an occasional official act such as signing a check on behalf of the company." (*Id.*) She points out that, at all times rele-

vant to this action, she was employed as an independent adjuster for a different corporation, and that she never had any contractual relationship with Christy-Main. (*Id.*)

On November 14, 2006, the Superior Court of Cobb County entered an order granting an interlocutory injunction (the "Interlocutory Injunction") in the Georgia Litigation. (Ex. B Supp. Pl.'s Mot. Stay.) [3] The Superior Court ordered Mr. Ouellette and Image Apparel Solutions (the "Georgia Defendants") not to make contact with current or prior customers of Christy-Main for the sale or rental of logoed [*9] or embroidered apparel or merchandise. (*Id.* 12.) In addition, the court ordered the Georgia Defendants not to disclose Christy-Main's confidential or proprietary information, not to engage in the sale or rental of logoed or embroidered merchandise in the Midwest, and not to deceive customers by implying any affiliation between Christy-Main and Image Apparel Solutions. (*Id.*)

> 3 As previously noted, at this stage, Ms. Ouellette was not a party to the Georgia Litigation due to the court's lack of personal jurisdiction over her.

On January 5, 2007, Ms. Ouellette resigned her position as President of Image Apparel Solutions and sold her entire interest in the corporation to Mr. Ouellette for one dollar ($ 1.00). (Def.'s Br. Opp'n 1; Ex. A Supp. Def.'s Br. Opp'n.) Approximately three months later, on April 3, 2007, both Mr. Ouellette and Image Apparel Solutions filed for bankruptcy under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court, Southern District of Indiana, Indianapolis Division. (Pl.'s Br. Supp. Mot. Stay 3.) The Georgia Litigation was then automatically stayed pursuant to *Section 362 of the Bankruptcy Code.* (*Id.*) On June 1, 2007, Christy-Main filed motions in [*10] the Bankruptcy Court seeking relief from the automatic stay in two respects: (1) to permit Christy-Main to proceed with the Georgia Litigation with regard to Image Apparel Solutions "in all respects except the collection of any monetary judgment obtained"; and (2) to permit Christy-Main to enforce the Interlocutory Injunction against Mr. Ouellette and seek other final injunctive relief. [4] (*Id.* 3-4.)

> 4 The court takes notice of the fact that Christy-Main's motion for relief from the automatic stay was granted with respect to Image Apparel Solutions by the bankruptcy court on July 26, 2007. In addition, the court takes notice of the fact that Christy-Main's motion for relief from the automatic stay with respect to Mr. Ouellette was granted by the bankruptcy court on September 10, 2007. Because Christy-Main sought a stay of the present proceedings only until it obtained re-

lief from the automatic stay, this provides an alternative ground for denying the motion under consideration.

Shortly thereafter, on June 15, 2007, Christy-Main filed the motion presently under consideration, seeking to stay all deadlines in this matter either until the Bankruptcy Court grants relief from the automatic [*11] stay or until the Bankruptcy Litigation is completed, resulting in the termination of the automatic stay. (Pl.'s Br. Supp. Mot. Stay 8.) Christy-Main argues that a stay should be granted under the *Colorado River* doctrine, which allows a district court, in exceptional circumstances, to stay or dismiss federal proceedings pending the resolution of parallel state litigation. Christy-Main argues that granting such a stay would serve to conserve judicial resources, avoid piecemeal litigation, and ensure that neither party gains an unfair litigation advantage as a result of the Bankruptcy Litigation. (Pl.'s Br. Supp. Mot. Stay 7-8.) Ms. Ouellette opposes the motion for a stay, arguing that the Georgia Litigation does not qualify as a "parallel" action, and that even if the two proceedings were parallel, the *Colorado River* discretionary factors would still weigh against a stay. (Def.'s Br. Opp'n 5, 9.) These arguments are addressed below.

## II. DISCUSSION

Although Christy-Main requests a stay of the present action only until it obtains relief from the automatic stay in the Bankruptcy Litigation, Christy-Main argues in its brief that the Georgia Litigation is the parallel action to which this [*12] court should defer under the *Colorado River* doctrine. Ms. Ouellette also argues against abstention with reference only to the Georgia Litigation, rather than the Bankruptcy Litigation. For this reason, and because it is clear that the Bankruptcy Litigation could not constitute a "parallel" action under the *Colorado River* doctrine, this court will address Christy-Main's arguments for abstention with regard to the Georgia Litigation.

In general, the federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," and ordinarily, there is no bar to contemporaneous, parallel litigation concerning the same matter in both state and federal court. *Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976).* However, under exceptional circumstances involving concurrent federal-state proceedings, a federal court may stay or dismiss a suit "as a matter of wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." *AAR Int'l, Inc. v. Nimelias Enters. S.A., 250 F.3d 510, 517 (7th Cir. 2001)* (quoting *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc., 180 F.3d 896, 898 (7th Cir. 1999))* [*13]

(internal quotations omitted); *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.,* 962 F.2d 698, 700 *(7th Cir. 1992).* Nevertheless, because of the "heavy obligation" of the federal courts to exercise jurisdiction, a district court should not seek "to find some substantial reason for the *exercise* of federal jurisdiction," but should instead ask whether "the clearest of justifications" exist "to justify the *surrender* of that jurisdiction." *AAR Int'l, 250 F.3d at 517-18* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25-26, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)) (emphasis in original) (internal quotations omitted).

Under *Colorado River,* a district court should follow a two-step process to determine whether abstention is appropriate. First, the court must determine whether the "concurrent state and federal proceedings are parallel." *Caminiti,* 962 F.2d at 700. If the state and federal actions are not parallel, then *Colorado River* doctrine is inapplicable. *AAR Int'l, 250 F.3d at 518.* However, if the state and federal actions are parallel, then the court should "balance the considerations that weigh in favor of, and against, abstention, bearing in mind the exceptional nature of the measure." *Finova Capital,* 180 F.3d 896, 898. [*14] These considerations include:

> (1) the identity of the court that first assumed jurisdiction over the property; (2) the relative inconvenience of the federal forum; (3) the need to avoid piecemeal litigation; (4) the order in which the respective proceedings were filed; (5) whether federal or [state] law provides the rule of decision; (6) whether the [state] action protects the federal plaintiff's rights; (7) the relative progress of the federal and [state] proceedings; and (8) the vexatious or contrived nature of the federal claim.

*Id.* (citing *Colorado River,* 424 U.S. at 818; *Moses H. Cone,* 460 U.S. at 23, 26). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Caminiti,* 962 F.2d at 701 (quoting *Colorado River,* 424 U.S. at 818-19).

State and federal actions need not involve identical parties and claims to be considered "parallel." *AAR Int'l, 250 F.3d at 518.* Rather, a state action is "parallel" to a federal action where "substantially the same parties are litigating substantially the same issues simultaneously" in both [*15] fora. *Finova Capital,* 180 F.3d at 898 (quoting *Schneider Nat'l Carriers, Inc. v. Carr,* 903 F.2d

1154, 1156 (7th Cir. 1990)) (internal quotations omitted). This means that formal symmetry between the two actions is not required, and that "the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel." *AAR Int'l, 250 F.3d at 518* (citing *Caminiti,* 962 F.2d at 700-01).

Although the two actions need not be identical to be considered parallel, they are only sufficiently similar to be considered parallel if "there is a substantial likelihood that the [state] litigation will dispose of all claims presented in the federal case." *Id.* (quoting *Day v. Union Mines, Inc.,* 862 F.2d 652, 656 (7th Cir. 1988)) (internal quotations omitted); *see also Finova Capital,* 180 F.3d at 898 (concluding suits were parallel because "the granting of relief in one forum would dispose of the claims raised in the other"); *Caminiti,* 962 F.2d at 701 (concluding suits were parallel despite slight difference in parties and issues because the granting of relief requested in the state probate court "would dispose of all claims raised in the federal case"); [*16] *cf. Schneider,* 903 F.2d 1154, 1156-57 (concluding that suits were parallel where the central issue to be resolved in both suits was identical, leaving "no difference whatever" between the two actions as between the federal litigants). "[T]he decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses," *Moses H. Cone,* 460 U.S. at 28; therefore, if there is "any substantial doubt that the [state] litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties," then it would be a "serious abuse of discretion to abstain under *Colorado River." AAR Int'l, 250 F.3d at 518, 520* (quoting *Moses H. Cone,* 460 U.S. at 28) (internal quotations omitted). Further, any doubt regarding whether the state and federal actions are parallel "should be resolved in favor of exercising jurisdiction." *AAR Int'l, 250 F.3d at 520* (citing *Allen v. Bd. of Educ. Unified Sch. Dist. 436,* 68 F.3d 401, 403 (10th Cir. 1995)).

Christy-Main correctly points out that two actions need not involve identical parties and claims to be considered parallel, [*17] and Christy-Main argues that the Georgia Litigation is parallel to the present action because substantially similar parties are contemporaneously litigating substantially similar claims in both actions. Christy-Main reasons that all the claims in the present suit against Ms. Ouellete are also present in the Georgia Litigation, that the two cases arise from a common nucleus of fact, and that the parties to the Georgia Litigation share nearly identical interests to those of Ms. Ouellette in the outcome of that litigation. (Pl.'s Reply Br. Supp. Mot. Stay 2-5.)

However, Christy-Main conspicuously fails to argue that the Georgia Litigation is likely to dispose of all claims in the present action. The absence of that argument is not altogether surprising, because at least one claim in this action, the corporate veil-piercing claim, cannot be resolved in the Georgia Litigation due to Ms. Ouellette's absence from that lawsuit. Indeed, Christy-Main brought this federal action, seeking to hold Ms. Ouellette personally liable for any liability imposed on Image Apparel Solutions in the Georgia Litigation, precisely because it could not pursue that claim (or its other claims against Ms. Ouellette) [*18] in the Georgia Litigation. As Christy-Main points out, the "crux" of its federal lawsuit is its claim that "Jan Ouellette and Image Apparel Solutions, Inc. are so intimately intertwined that this Court should pierce the corporate veil." (Pl.'s Br. Supp. Mot. Stay 6.)

Christy-Main correctly points out that if the Georgia Litigation does not produce a monetary judgment against Image Apparel Solutions, the veil-piercing claim in this action will be moot. However, this is not sufficient for *Colorado River* abstention; in order to abstain under this doctrine, the district court must not harbor "any substantial doubt" that the state litigation will dispose of all federal claims, regardless of which party prevails. *Moses H. Cone, 460 U.S. at 28* (noting that "the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case"). The cases cited by Christy-Main in support of its parallelism argument are consistent with this requirement. *See Caminiti, 962 F.2d at 701* (concluding that suits were parallel where the "basic issue" to be decided in both actions was identical and the granting of relief in [*19] the state forum would "dispose of all claims raised in the federal case"); *Schneider, 903 F.2d at 1156* (concluding that suits were parallel where both federal litigants were present in the state court action and, as between the federal litigants, there was "no difference whatever between the federal suit and the later state court action"); *Day, 862 F.2d at 656-57* (concluding that suits were parallel where both parties to the federal action were present in the state action and the federal issue would "almost inevitably be resolved" in the state action, regardless of which party prevailed); *see also Lumen, 780 F.2d at 695-96* (concluding that actions were parallel because "one can predict with some confidence that the state court litigation will probably eliminate the need for any further proceedings in federal court"). At this point, particularly in light of the Superior Court's Interlocutory Injunction against Mr. Ouellette

and Image Apparel Solutions, there is "substantial doubt" that the Georgia Litigation will render the corporate veil-piercing claim moot; indeed, at this point, it seems more likely that the Georgia Litigation's outcome will necessitate further proceedings on the [*20] corporate veil-piercing claim in this court.

However, even if this court harbored no substantial doubt that the Georgia Litigation would dispose of the corporate veil-piercing claim, there would still remain substantial doubt whether that litigation would dispose of the other claims against Ms. Ouellette in this action. The remaining claims (tortious interference with business relations, misappropriation of trade secrets, money had and received, unjust enrichment, federal unfair competition, common law and statutory unfair competition, deceptive trade practices, and fraud) seek to hold Ms. Ouellette personally liable for her participation in the operation of Image Apparel Solutions. These claims are not derivative of any claims against Mr. Ouellette and Image Apparel Solutions, but instead seek to hold Ms. Ouellette liable for her own actions. Given Ms. Ouellette's absence from the Georgia Litigation, it is difficult to see how that litigation would be likely to dispose of these claims.

Because it seems unlikely that the Georgia Litigation will dispose of all of Christy-Main's federal claims against Ms. Ouellette, the Georgia Litigation cannot be considered "parallel" to the present [*21] action under the *Colorado River* doctrine. For this court to hold otherwise would constitute a "serious abuse of discretion." *See AAR Int'l, 250 F.3d at 520* (reversing the district court's decision to abstain where it was not "substantially likely" that the foreign action would dispose of a lease provision interpretation issue in the federal action). Because the two actions are not parallel, this court cannot abstain under *Colorado River*, and it is therefore not necessary to weigh that doctrine's discretionary factors.

## III. CONCLUSION

For the reasons stated above, the Motion to Stay Pending Termination of the Automatic Stay Imposed by Bankruptcy (Docket No. 30) is **DENIED.**

ALL OF WHICH IS ENTERED this 6th day of November 2007.

John Daniel Tinder, Judge

United States District Court

LEXSEE 2007 U.S. DIST. LEXIS 59707

**NATIONAL COUNCIL ON COMPENSATION INSURANCE, INC., solely as Attorney-In-Fact for the participating companies of the National Workers Compensation Reinsurance Pool, Plaintiff, v. AMERICAN INTERNATIONAL GROUP, INC., AIG CASUALTY COMPANY F/K/A BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA, AIU INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, AMERICAN INTERNATIONAL PACIFIC INSURANCE COMPANY F/K/A AMERICAN FIDELITY COMPANY, AMERICAN INTERNATIONAL SOUTH INSURANCE COMPANY F/K/A AMERICAN GLOBAL INSURANCE COMPANY, AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY F/K/A ALASKA INSURANCE COMPANY, COMMERCE AND INDUSTRY INSURANCE COMPANY, INC., GRANITE STATE INSURANCE COMPANY, ILLINOIS NATIONAL INSURANCE COMPANY, INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, NEW HAMPSHIRE INDEMNITY COMPANY, and NEW HAMPSHIRE INSURANCE COMPANY, Defendants.**

**No. 07 C 2898**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2007 U.S. Dist. LEXIS 59707*

**August 6, 2007, Decided
August 6, 2007, Filed**

**SUBSEQUENT HISTORY:** Motion granted by, in part, Motion denied by, in part, Injunction granted at, in part *Nat'l Council on Comp. Ins., Inc. v. Am. Int'l Group, Inc., 2007 U.S. Dist. LEXIS 91517 (N.D. Ill., Dec. 11, 2007)*

**COUNSEL:** [*1] For National Council on Compensation Insurance, Inc., solely as Attorney-In-Fact for the participating companies of the National Workers Compensation Reinsurance Pool, Plaintiff: Margaret Marcia Schuchardt, LEAD ATTORNEY, Matthew T. Furton, Patrick Sean Coffey, Rowe W. Snider, Lord Bissell & Brook, Chicago, IL.

For American International Group, Inc., Defendant: Brendan N. Snodgrass, Jennifer J. Barrett, Michael B Carlinsky, Quinn Emanuel Urquhart Oliver & Hedges, LLP, New York, NY; John F. Shonkwiler, Stephen Novack, Novack & Macey, Chicago, IL; Patrick A. Fleming, Novack & Macey LLP, Chicago, IL.

For AIG Casualty Company, formerly known as Birmingham Fire Insurance Company of Pennsylvania, AIU Insurance Company, American Home Assurance Company, American International Pacific Insurance Company, formerly known as American Fidelity Company, American International South Insurance Company, formerly known as American Global Insurance Company, American International Specialty Lines Insurance Company, formerly known as Alaska Insurance Company, Commerce and Industry Insurance Company, Inc., Granite State Insurance Company, Illinois National Insurance Company, Insurance Company of the State [*2] of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, New Hampshire Indemnity Company, New Hampshire Insurance Company, Defendants: Brendan N. Snodgrass, Quinn Emanuel Urquhart Oliver & Hedges, LLP, New York, NY; John F. Shonkwiler, Stephen Novack, Novack & Macey, Chicago, IL; Patrick A. Fleming, Novack & Macey LLP, Chicago, IL.

**JUDGES:** Robert W. Gettleman, United States District Judge.

**OPINION BY:** Robert W. Gettleman

**OPINION**

2007 U.S. Dist. LEXIS 59707, *

## MEMORANDUM OPINION AND ORDER

Plaintiff National Council on Compensation Insurance, Inc. ("NCCI"), solely as Attorney-In-Fact for the participating companies of the National Workers Compensation Reinsurance Pool ("NWCRP"), has brought an eight-count complaint against defendants American International Group, Inc. ("AIG") and its affiliates and subsidiaries, AIG Casualty Company f/k/a Birmingham Fire Insurance Company of Pennsylvania, AIU Insurance Company, American Home Assurance Company, American International Pacific Insurance Company f/k/a American Fidelity Company, American International South Insurance Company f/k/a American Global Insurance Company, American International Specialty Lines Insurance Company f/k/a Alaska Insurance Company, Commerce and Industry Insurance Company, [*3] Inc., Granite State Insurance Company, Illinois National Insurance Company, Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, New Hampshire Indemnity Company, and New Hampshire Insurance Company (the "AIG Companies"), collectively the "AIG Defendants." The complaint alleges: violations of the Racketeer Influenced and Corrupt Organizations Act, *18 U.S.C. § 1962(c)* and *(d)* ("RICO") (Counts I and II); fraud (Count III); accounting (Count IV); action on an open, current and mutual account (Count V); breach of contract (Count VI); promissory estoppel (Count VII); and unjust enrichment (Count VIII). Defendants have moved for abstention under the Colorado River doctrine or, alternatively, to dismiss on forum non conveniens grounds or to transfer the case to the Southern District of New York pursuant to *28 U.S.C. § 1404(a)*. For the reasons discussed below, the court denies defendants' motion.

## FACTS

Every state requires employers to provide workers compensation insurance for their employees. Most employers are able to find an insurance company willing to provide them with coverage. These employers are known in the insurance industry as the "voluntary [*4] market." Some employers are unable to find an insurance company willing to provide them with workers compensation insurance. To resolve this problem, many states have created a separate insurance pool for employers who are otherwise unable to obtain workers compensation insurance. This pool is called the "residual market."

Any insurer who writes workers compensation policies for the voluntary market in a state with a residual market is required to provide reinsurance for a portion of that state's residual market. The amount of reinsurance an insurer is required to provide to the residual market is directly proportional to the amount of premiums it col-

lects for the workers compensation policies it writes for the voluntary market.

The NWCRP was established to provide insurance companies with a means of complying with the requirement that they participate in the residual market. Since 1970, the NWCRP has facilitated the proportional sharing of residual market costs in more than 40 states. Through the NWCRP mechanism, an insurance company, or "Participating Company," is assigned to provide reinsurance for a particular employer. The Participating Company, known as a "servicing carrier," then [*5] provides certified financial reports to the NWCRP, which allocates the costs of the reinsurance to the other Participating Companies on a proportional basis. Plaintiff NCCI acts as the administrator of the NWCRP and as Attorney-In-Fact for the NWCRP Participating Companies in the instant case.

In 2005, an investigation indicated that defendants had, over several decades, engaged in a series of false premium reporting practices to evade their residual market obligations, as well as state insurance taxes. Defendant AIG's senior management, including the Chairman and CEO, directed AIG affiliates to submit false financial statements that deliberately underreported workers compensation premium information, generally by reporting the revenue as general liability or reinsurance assumed premium.

The investigation also disclosed that defendants' false reports had been the subject of an internal investigation in 1991 and 1992. That investigation, led by defendant AIG's senior legal officer, produced a formal report acknowledging defendants' unlawful conduct and determining that the amount of workers compensation premium that had gone unreported totaled approximately $ 300-400 million annually [*6] and yielded "an unlawful benefit in the range of $ 60-$ 80 million or more annually." The AIG report admitted that defendants' reporting practices were unlawful and exposed them to civil liability and potential criminal prosecution. Specifically, the report stated, "Potential plaintiffs who could take advantage of this and other causes of action are the other insurance companies who have to pick up AIG's share of residual market assessment and other assessments...." After learning of these improper actions, AIG officials destroyed evidence and relevant records and chose not to disclose the information to other insurance companies. According to plaintiff, defendants have continued to file false financial reports.

In 2006, defendant AIG entered into settlement agreements with several enforcement authorities. As part of a $ 1.6 billion settlement with New York and federal authorities, defendant AIG paid $ 100 million to the state of New York and approximately $ 42 million to various

states. Defendant AIG also agreed to pay at least $ 301 million to victims of its false workers compensation premium reporting through a fully funded settlement fund. Pursuant to an agreement, the fund is to [*7] be distributed in three stages. Before September 1, 2007, a participating state (as defined in the agreement) can recover by tendering a release to defendant AIG for all claims that state's residual market pool may have related to defendants' underreporting. Between September 2, 2007, and October 31, 2009, defendant AIG can use the fund to settle claims directly with affected parties. After November 1, 2009, remaining funds will be distributed on a pro rata basis to the participating states. No portion of the fund can revert to defendant AIG.

The NWCRP Participating Companies did not believe that the settlement agreements entered into by defendant AIG offered full and fair restitution. According to plaintiff, total damages exceed $ 1billion. For that reason, the NWCRP has refused to allow any state to tender a release on its behalf, which precludes those states from participating in the settlement fund. On May 24, 2007, upon the expiration of a "stand still" agreement between the parties (during which they exchanged information regarding the settlement fund), defendant AIG filed suit against NWCRP and NCCI as its attorney-in-fact in the New York State Supreme Court. That action seeks: [*8] (1) a declaration of the liability defendant AIG has to the NWCRP as a result of its underreporting; (2) a declaration that recovery from the settlement fund is the NWCRP's sole remedy for defendants' underreporting; and (3) an order requiring the NWCRP to permit the states within which it operates to participate in the settlement fund. Within hours of the filing of the New York suit, plaintiff filed the instant suit.

## DISCUSSION

Motion For Abstention

*Colorado River*

Defendants have filed a motion to stay the instant suit under the abstention doctrine set forth in *Colorado River Conservation Dist. v. United States, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976)*. "Federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress." *AAR Int'l, Inc. v. Nimelias Enterprises S.A., 250 F.3d 510, 517 (7th Cir. 2001)*, quoting *Colorado River, 424 U.S. at 817*. Because courts are concerned with "conservation of judicial resources," however, this court may, under "limited" and "exceptional" circumstances, stay or dismiss [1] an action when there is an ongoing parallel action in state court. *Id. at 818; LaDuke v. Burlington Northern Railroad Co., 879 F.2d 1556, 1558 (7th Cir. 1989)*.

1   A [*9] stay, rather than a dismissal, is the appropriate procedure because a stay keeps the federal forum available if the state court action does not result in a final judgment. *J&A Sales and Marketing, Inc. v. J.R. Wood, Inc., 2002 U.S. Dist. LEXIS 6979, *5, 2002 WL 653897, *2 (N.D. Ill. Apr. 19, 2002)*, citing *Rosser v. Chrysler Corp., 864 F.2d 1299, 1308 (7th Cir. 1988)*.

"A federal court cannot lightly abjure its responsibility to assert jurisdiction." *Lumen Constr., Inc. v. Brant Constr. Co. Inc., 780 F.2d 691, 694 (7th Cir. 1985)*. Thus, "if there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation. *AAR Int'l, 250 F.3d at 518* (internal citations omitted).

To determine whether Colorado River abstention is appropriate, the court must first address whether the state and federal actions are parallel. *Id.* If the actions are parallel, the court then considers the factors articulated in Colorado River and its progeny to determine whether exceptional circumstances exist to warrant abstention. *Id.*

Actions [*10] are parallel if "substantially the same parties are litigating substantially the same issues in two fora." Id. A court does not ask whether the suits are "formally symmetrical" or identical, but rather if there is "a substantial likelihood that the foreign litigation 'will dispose of all claims presented in the federal case.'" Id., quoting *Day v. Union Mines, Inc., 862 F.2d 652, 656 (7th Cir. 1988)*.

Notwithstanding defendants' arguments to the contrary, the court is not persuaded that the instant action and the New York suit are parallel. Although the parties are the same, the actions do not arise out of the same set of facts. The New York suit seeks a declaration that the settlement fund is a sufficient resolution of the NWCRP's claims. The instant suit, however, seeks different remedies, including compensatory and punitive damages, for the actions taken by defendants that, among other things, ultimately led to the establishment of the settlement fund. Further, the instant suit involves a federal RICO claim, which would not likely be disposed of in the New York action. [2] The court therefore concludes that the New York suit and the instant suit are not parallel.

2   Defendants argue that [*11] plaintiff's RICO claim is facially deficient. As discussed below, plaintiff has stated a sufficient RICO claim against defendant AIG, its affiliates, and its executives.

Even if the court concluded that the actions were parallel, abstention is still not warranted in the instant case because exceptional circumstances to not exist to justify staying the instant suit. The court must analyze the following factors to determine whether "exceptional circumstances" exist to justify deference to the state court under Colorado River: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent fora; (5) the source of governing law; (6) the adequacy of state court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Lumen*, 780 F.2d at 694-95.

The decision to abstain is based on an "assessment of the totality of the circumstances." [*12] *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 900 (7th Cir. 1999). The court's decision to abstain should therefore not rest on a "mechanical checklist" of the relevant factors, and the weight given to any particular factor will vary from case to case, depending on the particular setting of the case at hand. *LaDuke*, 879 F.2d at 1559, citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). Because the court considers the totality of the circumstances, it may also consider any other "special factors counseling for or against the exercise of jurisdiction in the case before it." *LaDuke*, 879 F.2d at 1559.

According to defendants, New York's pre-existing interest in the litigation constitutes such a "special factor." Defendants claim that New York has a paramount interest in this litigation because it has expended time and resources in creating the settlement fund. While defendants may be correct that New York has devoted considerable resources to investigating defendants' conduct, New York has already received $ 42 million from defendants and will not receive additional money from the settlement fund. Further, New York is one of the few [*13] states that does not participate in the NWCRP, which leads the court to believe that New York has less of an interest in the outcome of this suit than the states participating in the NWCRP, including Illinois. For that reason, the court finds that New York does not have a "paramount interest" in this litigation.

The court also finds that the ten traditional factors set out in *Lumen* weigh against abstention. The first factor is inapplicable, since there is no property at issue in the New York suit. The second factor, inconvenience of the federal forum, disfavors abstention, because defendants cannot credibly claim that the Northern District of Illinois is an inconvenient forum. Defendants' only argument is that it would be "difficult and expensive" to move paper documents to Illinois. Moving these documents to Chicago would be no more difficult or expensive than moving them to a courtroom in another district, and the court is not persuaded by this argument.

The third factor, the desire to avoid piecemeal litigation, does weigh in favor of abstention. The New York suit and the instant case overlap and involve similar issues. Nevertheless, as discussed below, a complete resolution of the [*14] New York action will not necessarily dispose of plaintiff's RICO claims. Further, "it is not enough, to justify abstention, that a failure to stay the federal suit may result in judicial diseconomy -- in having two active lawsuits instead of one." Accordingly, although this factor favors abstention, the court's inquiry does not end here. See, e.g., *AXA Corp. Solutions v. Underwriters Reinsurance Co.*, 2002 U.S. Dist. LEXIS 19407, *27, 2002 WL 31260009, *9 ("[P]iecemeal litigation, in and of itself, can hardly be called 'exceptional circumstances.'").

The fourth factor, the order in which jurisdiction was obtained, is neutral; it has "little independent relevance...especially [] in cases like this one, in which the respective complaints are filed within hours of each other, making priority of filing mostly serendipitous." *J&A Sales & Marketing, Inc. v. J.R. Wood, Inc.*, 2002 U.S. Dist. LEXIS 6979, *13, 2002 WL 653897, *4 (N.D. Ill. 2002). As discussed above, the parties were subject to a "stand still" agreement during which they agreed not to initiate any litigation. That agreement expired on May 24, 2007, and both parties filed suit on that day.

The fifth factor, the source of governing law, weighs against abstention. Defendants argue that because New York [*15] has the greatest connection to this dispute, New York law should govern the state law claims brought in both suits. As already discussed, however, New York has no interest in these suits, as the state has already reached a settlement agreement with defendants and will not receive any additional money from the settlement fund. Further, plaintiff's RICO claims are governed by federal statute; "[p]articular weight must be given to the presence of a federal question in the case; that factor weighs heavily against abstention." *Sverdrup Corp. v. Edwardsville Cmty. Unit Sch. Dist. No. 7*, 125 F.3d 546, 549 (7th Cir. 1997). The fifth factor is balanced, to some extent, by the sixth factor, the adequacy of the state court action, and the eight factor, the presence of concurrent jurisdiction. Plaintiff does not dispute that the state court could exercise jurisdiction over the civil RICO claims if plaintiff asserted them in the New York suit. See, e.g., *Tafflin v. Levitt*, 493 U.S. 455, 467, 110 S. Ct. 792, 107 L. Ed. 2d 887 (1990) (holding that state courts have concurrent jurisdiction to consider civil

claims arising under RICO). On balance, though, these three factors are at least neutral and do not favor abstention.

The seventh [*16] factor, the relative progress of proceedings, is neutral, given that the actions were filed on the same day and are at the same stage of litigation. The ninth factor, the availability of removal, weighs against abstention. The New York suit is not removable to federal court, and as a result, if the instant case is stayed, plaintiff will be precluded from adjudicating its claims in a federal forum. See, e.g., *J&A Sales and Marketing, Inc.*, 2002 U.S. Dist. LEXIS 6979, *15, 2002 WL 653897 at *5.

### Sufficiency of RICO Count

Finally, the tenth factor, whether the federal claim is vexatious or contrived, weighs against abstention. Defendants argue repeatedly that plaintiff's RICO claims are contrived and that the complaint does not allege RICO violations sufficiently. Their arguments, however, fly in the face of the warnings of the report drafted by their own legal counsel, which states, "A jury could find that the above conduct constitutes various kind of State and Federal civil and criminal violations, including...RICO violations." Whether defendants' actions actually constituted a RICO violation is not for the court to decide at this time; what the court must decide is whether plaintiff's RICO claims are contrived. The court [*17] finds that they are not.

To state a claim under RICO, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Jennings v. Auto Meter Products Inc.*, -- F.3d --, 495 F.3d 466, 2007 U.S. App. LEXIS 17618, 2007 WL 2120337 (7th Cir. July 25, 2007), citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 481, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985). Defendants do not dispute that plaintiff alleges conduct establishing a pattern of racketeering activity in the complaint. They argue, however, that plaintiff has not alleged a sufficient "enterprise" separate and distinct from the AIG companies named as racketeering defendants. As plaintiff points out, however, a holding company and its affiliates can constitute an "enterprise" for RICO purposes if the complaint alleges that the parent company used the affiliate companies to perpetrate and hide its fraudulent actions. *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 934 (7th Cir. 2003). Further, "RICO is to be read broadly" when construing claims. *Sedima*, 473 U.S. at 497. The court therefore finds that plaintiff's RICO claims are not contrived or vexatious.

As outlined above, the factors set out in *Lumen* weigh against abstention in the instant case. "If [*18] there is any substantial doubt that the parallel litigation

will be 'an adequate vehicle for the complete and prompt resolution of the issues between the parties,' it would be a 'serious abuse of discretion' for the district court to stay or dismiss a case in deference to the parallel litigation." *AAR Int'l*, 250 F.3d at 518, quoting *Moses H. Cone, 460 U.S. at 28*. Therefore, even if the court had found that the case pending in New York paralleled the instant case, the doubt the court has regarding the adequacy of that New York litigation requires this court to deny defendants' motion for abstention.

### Forum Non Conveniens

Defendants next ask the court to dismiss the instant suit for forum non conveniens. In a motion to dismiss for forum non conveniens, defendants must show that (1) there is an adequate, available forum elsewhere, and (2) the balance of private and public interests favors dismissal. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981). An alternative forum is available if all parties are amenable to process and are within the forum's jurisdiction. *Kamel v. Hill-Rom Co., 108 F3d 799, 803 (7th Cir. 1997)*. Further, an adequate form mandates that the parties will not be deprived [*19] of all remedies or treated unfairly. *ISI Intern, Inc. v. Borden Ladner Gervais, LLP*, 2001 U.S. Dist. LEXIS 18202, *8, 2001 WL 1382572, *3 (N.D. Ill. 2001).

In the instant case, plaintiff concedes that New York is an adequate and alternative forum. Plaintiff disputes, however, defendants' claim that the balance of private and public interests favors dismissal of the instant suit. The court agrees with plaintiff. Private interest factors considered in ruling on a form non conveniens motion include: (1) ease of access to sources of prof; (2) the availability of compulsory process for hostile witnesses and the cost of obtaining the attendance of willing witnesses; (3) the possibility of viewing the premises, if appropriate; and (4) all other practical problems that make trial of the case easy, efficient, and economical. *Kamel, 108 F.3d at 803*. The pertinent public interest factors are: (1) the court's own docket congestion; (2) the preference for having a forum apply law with which it is familiar; (3) the local interest in resolving the controversy; and (4) the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper*, 454 U.S. at 241 n. 6; *Kamel*, 108 F.3d at 803. A district court has "substantial flexibility" [*20] in considering the relative importance of these factors. *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990).

Defendants have provided little evidence in favor of dismissal based on the private interest factors. At most, defendants have asserted that transporting their documents to Illinois would be burdensome. Defendants have also not made a compelling case with regard to the public interest factors, especially given the fact that this case

2007 U.S. Dist. LEXIS 59707, *

arises from their own admitted fraudulent actions. Defendants claim that Illinois and its potential jurors have no interest in hearing the instant suit. Illinois, however, participates in the NWCRP, and its citizens have allegedly been harmed by higher insurance prices stemming from defendants' fraudulent reporting. The court therefore finds that the public and private interest factors weigh against dismissal and denies defendants' motion to dismiss for forum non conveniens.

### § 1404(a) Transfer of Venue to the Southern District of New York

Finally, defendants ask the court to transfer the instant suit to the Southern District of New York pursuant to *28 U.S.C. § 1404(a)*, which provides that "[f]or the convenience of parties and witnesses, [*21] in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." Transfer is appropriate when the moving party demonstrates that: (1) venue is proper in both the transferor and transferee courts; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. *Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 n.3 (7th Cir. 1986)*. As the moving parties, defendants must show that the "transferee forum is clearly more convenient" than the transferor forum." *Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989)*, citing *Coffey, 796 F.2d at 219-20*. Defendants must also show that a transfer will promote the efficient administration of justice, rather than simply shift the inconvenience from one party to the other. See, e.g., *Black v. Mitsubishi Motors Credit of America, Inc., 1994 U.S. Dist. LEXIS 11158, *3, 1994 WL 424112, *1 (N.D. Ill. Aug. 10, 1994)*.

The parties do not dispute that venue is proper in both the Northern District of Illinois, the proposed transferor court, and the Southern District of New York, the proposed transferee court. This court therefore has the power [*22] to transfer the case if doing so is in the interest of justice and for the convenience of the parties and witnesses. In evaluating the convenience and fairness of a transfer, the court must consider relevant private and public interests. The private interests include: (1) plaintiff's initial choice of forum; (2) the situs of material events; (3) ease of access to sources of proof; (4) the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of the witnesses; and (5) the convenience to the parties, specifically their respective residences and their ability to bear the expense of litigation in a particular forum. *Georgouses v. NaTec Resources, Inc., 963 F. Supp. 728, 730 (N.D. Ill. 1997)*.

*Private Interests*

Defendants concede that plaintiff's initial choice of forum is entitled to deference, but they argue that such deference is not warranted when the operative facts giving rise to the claim did not take place in plaintiff's chosen forum. Defendants consistently argue that plaintiff has no connection to Illinois, but defendants are mistaken; as plaintiff points out, defendants caused injury to more than 160 NWCRP participating [*23] companies licensed to write workers compensation insurance policies in Illinois. Plaintiff has therefore demonstrated a sufficient nexus to Illinois as a location where material events took place, and its choice of forum is entitled to deference. Although the remaining factors may weigh slightly in favor of defendants, given that the witnesses listed thus far by defendants live in New York, these factors do not outweigh plaintiff's choice of forum.

*Public Interests*

In addition to the private interest factors, which weigh in favor of plaintiff, the court must also consider the public interest factors, which include: (a) the relation of the community to the occurrence at issue in the litigation and the desirability of resolving the controversies in their locale; (b) the court's familiarity with the applicable law; and (c) the congestion of respective court dockets and the prospect for earlier trial. *Georgouses, 963 F. Supp. at 730*. Once again, because more than 160 companies were injured in Illinois, this state has a strong connection to the litigation and an interest in resolving the dispute here. Further, this court is competent to hear both federal claims and any underlying state law [*24] claims, and defendants concede that the congestion of respective court dockets does not weigh in favor of either party. For that reason, the court finds that the public interest factors weigh in favor of plaintiff.

Because both the private and public interest factors weigh in favor of plaintiff, the court denies defendants' motion to transfer this case to the Southern District of New York.

### CONCLUSION

For the reasons discussed above, the court denies defendants' motion to abstain under Colorado River, to dismiss on forum non conveniens grounds, and to transfer to the Southern District of New York pursuant to *28 U.S.C. § 1404(a)*. Defendants are directed to file an answer to the complaint or otherwise respond on or before September 5, 2007. The parties are directed to prepare and file a Joint Status Report using this court's form on or before September 12, 2007. This matter is set for a report on status September 19, 2007, at 9:00 a.m.

**ENTER: August 6, 2007**

2007 U.S. Dist. LEXIS 59707, *

**Robert W. Gettleman**                                    **United States District Judge**

LEXSEE 2003 U.S. DIST. LEXIS 9089

**ENFRA LLC and COMPASS ENVIRONMENTAL, INC., Plaintiffs, v. RICK CAPORALE, Defendant.**

**No. 02 C 8856**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2003 U.S. Dist. LEXIS 9089*

**May 15, 2003, Decided
May 30, 2003, Docketed**

**DISPOSITION:**    [*1]  Defendant's motion to stay denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, a limited liability company and a corporation, filed suit against defendant former CEO asserting state law claims for breach of contract, breach of fiduciary duty, fraud, and Racketeer Influenced and Corrupt Organizations Act (RICO), *18 U.S.C.S. § 1961 et seq.*, and Federal Declaratory Judgment Act, *28 U.S.C.S. § 2201* claims. The CEO moved to stay the action in favor of his lawsuit against plaintiffs in California state court.

**OVERVIEW:** Plaintiffs' complaint alleged that, during his tenure as CEO of the limited liability company, the former CEO engaged in dishonorable, illegal, unethical and unprofessional conduct in violation of the parties "Operating Agreement." That agreement contained a forum selection clause with Illinois the situs of all actions arising out of the agreement. Because plaintiffs asserted claims in the instant case arising solely under the Operating Agreement that the former CEO denied were related in any way to his claims in the California suit, as well as a RICO claim that involved matters unrelated to the parties' employment agreement involved in the California suit, the court found that the resolution of the California suit would not necessarily resolve all of the claims and issues before the court. The court thus concluded that abstention was not warranted.

**OUTCOME:** The former CEO's motion to stay was denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Federal & State Interrelationships > Abstention*
[HN1] Federal courts have a virtually unflagging obligation to exercise the jurisdiction conferred on them by Congress. Nonetheless, animated by concerns about "wise judicial administration" and "conservation of judicial resources," in Colorado River, the United States Supreme Court holds that under "limited" and "exceptional" circumstances, a federal district court may stay or dismiss an action when there is an ongoing parallel action in state court. The United States Court of Appeals for the Seventh Circuit holds that a stay, instead of a dismissal, is the appropriate procedure because a stay keeps the federal forum available if the state court action does not result in a final judgment.

*Civil Procedure > Federal & State Interrelationships > Abstention*
[HN2] A federal court cannot lightly abjure its responsibility to assert jurisdiction. Thus, if there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation. To determine whether Colorado River abstention is appropriate, a court must first address whether the state and federal actions are parallel. If the actions are parallel, the court then considers the factors articulated in Colorado River and its progeny to determine whether exceptional circumstances exist warranting abstention. Suits are parallel if substan-

tially the same parties are litigating substantially the same issues simultaneously in two fora. A court asks not whether the suits are "formally symmetrical" or identical, but rather whether there is a substantial likelihood that the foreign litigation will dispose of all claims presented in the federal case.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > Concurrent Jurisdiction*
*Civil Procedure > Federal & State Interrelationships > Abstention*
[HN3] There are 10 factors that a district court can consider in deciding whether "exceptional circumstances" exist that would justify deference to the state courts under Colorado River: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. The decision to abstain is based on an assessment of the totality of the circumstances. Thus, the district court's decision whether to abstain should not rest on a "mechanical checklist" of the relevant factors, and the weight given to any particular factor will vary greatly from case to case, depending on the particular factual setting of the case at hand.

*Civil Procedure > Federal & State Interrelationships > Abstention*
[HN4] It is not enough, to justify abstention, that a failure to stay the federal suit may result in judicial diseconomy, in having two active lawsuits instead of one. Piecemeal litigation, in and of itself, can hardly be called "exceptional circumstances."

*Antitrust & Trade Law > Private Actions > Racketeer Influenced & Corrupt Organizations > Claims > General Overview*
*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > Concurrent Jurisdiction*
[HN5] State courts have concurrent jurisdiction to consider civil claims arising under the Racketeer Influenced

and Corrupt Organizations Act, (RICO), *18 U.S.C.S. § 1961 et seq.*

*Civil Procedure > Federal & State Interrelationships > Abstention*
[HN6] If there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation.

**COUNSEL:** For ENFRA LLC, COMPASS ENVIRONMENTAL, INC., plaintiffs: James David Roberts, Catherine M. Burkhardt, Piper Rudnick, Chicago, IL.

For RICK CAPORALE, defendant: Glen E. Amundsen, Mari Ann Novy, O'Hagan, Smith & Amundsen, L.L.C., Chicago, IL.

**JUDGES:** Robert W. Gettleman, United States District Judge.

**OPINION BY:** Robert W. Gettleman

**OPINION**

*MEMORANDUM OPINION AND ORDER*

On December 9, 2002, plaintiffs Enfra LLC ("Enfra") and Compass Environmental, Inc. ("Compass") filed a six-count complaint against defendant Rick Caporale arising from acts allegedly committed by him during his tenure as Enfra's Chief Executive Officer ("CEO"). In their complaint, plaintiffs assert state law claims for breach of contract, breach of fiduciary duty, and fraud, as well as claims arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), *18 U.S.C. § 1961 et seq.*, and the Federal Declaratory Judgment Act, *28 U.S.C. § 2201.* Defendant moved to stay the instant action pursuant to *Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976),* [*2] in favor of a lawsuit that he brought against plaintiffs in California state court on October 29, 2002. For the reasons stated herein, defendant's motion is denied.

*FACTS*

Enfra is an Illinois limited liability company with its principal place of business in Brea, California, and Compass is an Indiana corporation with its principal place of business in Chicago, Illinois. Defendant resides in California and served as Enfra's CEO from September 2001 through October 2002.

According to plaintiffs' complaint, defendant approached Compass with a proposal to form an entity that would remediate environmentally distressed properties and develop and market products for use in connection with such properties. To this end, on September 5, 2001, defendant, Compass, and Henry Richter (the "Members") formed Enfra, and Enfra and defendant entered into an Employment Agreement through which defendant would serve as Enfra's CEO on the terms set forth therein. The Employment Agreement provides that defendant could be terminated for "cause," which is defined as "conduct which is dishonorable, illegal, unethical or unprofessional." The Employment Agreement further provides that it shall be governed [*3] by and construed in accordance with Illinois law.

On September 6, 2001, the Members executed Enfra's Operating Agreement, which sets forth the rights and obligations of the Members with respect to Enfra. The Operating Agreement provides that it, the affairs of Enfra, and the rights and obligations of the Members are to be governed by Illinois law, and that "any action, suit, proceeding or counterclaim of any kind directly or indirectly arising out of or related to [the Operating Agreement] will be litigated in courts having situs in Chicago, Illinois."

Plaintiffs' complaint alleges that, during his tenure as CEO, defendant engaged in "dishonorable, illegal, unethical and unprofessional conduct." For example, according to plaintiffs, defendant caused Enfra to purchase 290 gallons of a product called Bacto-Zyme for resale to Enfra customers. Plaintiffs allege that defendant remitted customers' subsequent payments for the Bacto-Zyme products to The Charbon Group - a company that is 40%-owned by defendant - at defendant's home address, rather than to Enfra. Plaintiffs also allege that defendant made misrepresentations to Enfra's managers regarding the number of states licensed to distribute [*4] a product known as Perma-Zyme, thereby inducing Enfra to enter into a licensing agreement to distribute Perma-Zyme. Plaintiffs' complaint further alleges that defendant charged personal expenses to Enfra, violated managers' directives for personal gain, and directed a "donation" of $ 14,000 worth of Perma-Zyme to The Charbon Group without the approval or knowledge of Enfra's other managers.

On October 23, 2002, Compass sent a letter to defendant requesting his resignation. Rather than resigning, on October 29, 2002, defendant filed suit against Enfra, Compass, and Compass' principal, Jonathon Markoff, in the Superior Court of Orange County, California (the "California suit"), claiming constructive termination of the Employment Agreement. The complaint in the California suit alleged that the "causes of action herein do not arise out of the terms and conditions of the Operating

Agreement." On October 31, 2002, defendant resigned as Enfra's CEO.

Plaintiffs filed the instant action on December 9, 2002, asserting six claims: (1) seeking a declaration that Enfra is entitled to terminate the Employment Agreement for cause based on defendant's dishonorable, illegal, unethical and unprofessional [*5] conduct as CEO; (2) seeking a declaration that neither Enfra nor Compass has any liability to defendant under the Operating Agreement; (3) breach of contract; (4) breach of fiduciary duty; (5) fraud arising out of defendant's alleged misrepresentations regarding Perma-Zyme; and (6) civil RICO based on a conspiracy between defendant and The Charbon Group to "illegally divert monies and business from Enfra customers to The Charbon Group."

On January 7, 2003, [1] Enfra presented a motion in the California court to dismiss or stay the California suit based on the forum selection clause in the Operating Agreement, arguing that Caporale's claims in the California suit arose directly or indirectly out of, and were thus related to, the Operating Agreement. In response, defendant argued that he "does not assert any claim arising out of or related in anyway [sic] to the Operating Agreement." On January 8, 2002, the California court denied the motion, holding that the public policy of the State of California allowed Caporale to pursue his claims based exclusively on the Employment Agreement in California courts.

1    The plaintiffs' motion to dismiss or stay the California suit was file-stamped on December 9, 2002, the same day that the instant suit was initiated.

[*6] On January 21, 2003, defendant filed a motion to stay the instant suit under the abstention doctrine announced in *Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976)*. As of the date of the instant motion, the parties had engaged in discovery in the California suit, including interrogatories, requests for documents, and notices of deposition. With this background in mind, the court turns to the legal standards governing the instant motion.

## DISCUSSION

[HN1] "Federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress." *AAR International, Inc. v. Nimelias Enterprises S.A., 250 F.3d 510, 517 (7th Cir. 2001)*, quoting *Colorado River, 424 U.S. at 817*. Nonetheless, animated by concerns about "wise judicial administration" and "conservation of judicial resources," in *Colorado River*, the Supreme Court held that under "limited" and "excep-

tional" circumstances, a federal district court may stay or dismiss [2] an action when there is an ongoing parallel action in state court. *Id. at 818*; *La Duke v. Burlington Northern Railroad Company, 879 F.2d 1556, 1558 (7th Cir. 1989)*. [*7]

> 2    The Seventh Circuit has held that a stay, instead of a dismissal, is the appropriate procedure because a stay keeps the federal forum available if the state court action does not result in a final judgment. *J & A Sales and Marketing, Inc. v. J.R. Wood, Inc., 2002 U.S. Dist. LEXIS 6979, 2002 WL 653897, at *2 (N.D.Ill. April 19, 2002)*, citing *Rosser v. Chrysler Corp., 864 F.2d 1299, 1308 (7th Cir. 1988)*.

As the Seventh Circuit noted in *Lumen Construction, Inc. v. Brant Construction Co. Inc., 780 F.2d 691, 694 (7th Cir. 1985)*, [HN2] "a federal court cannot lightly abjure its responsibility to assert jurisdiction." Thus, "if there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation." (Internal citations omitted.) *AAR International, Inc., 250 F.3d at 518*.

To determine whether *Colorado River* abstention is appropriate, a court must first address whether the state and federal actions [*8] are parallel. *AAR International, Inc., 250 F.3d at 518*. If the actions are parallel, the court then considers the factors articulated in *Colorado River* and its progeny to determine whether exceptional circumstances exist warranting abstention. *AAR International, Inc., 250 F.3d at 518*.

Suits are parallel if "substantially the same parties are litigating substantially the same issues simultaneously in two fora." *Id*. A court asks not whether the suits are "formally symmetrical" or identical, but rather whether there is "a substantial likelihood that the foreign litigation 'will dispose of all claims presented in the federal case.'" *Id.*, quoting *Day v. Union Mines, Inc., 862 F.2d 652, 656 (7th Cir. 1988)*.

Notwithstanding defendant's arguments to the contrary, the court is not persuaded that the instant action and the California suit are parallel. To begin, at least two of the claims in the instant suit - Counts II and V - specifically rely on the Operating Agreement. In contrast, in both his complaint in the California suit as well as his response to plaintiffs' motion to stay or dismiss that suit, defendant maintained that the claims [*9] in the California suit are unrelated to the Operating Agreement, presumably to avoid the forum selection clause contained therein. Thus, defendant's own characterization of the

California suit belies his argument that the two suits are parallel.

Moreover, Count VI, which seeks damages under civil RICO, is a claim that will not necessarily be disposed of in the California suit, notwithstanding the likelihood that the predicate acts contemplated by the RICO claim will be raised as a defense to the California suit. For example, it is conceivable that plaintiffs could successfully defend the California suit on the basis of the alleged predicate acts, and yet fail to prevail on their civil RICO claim in the instant suit. [3] Thus, the court concludes that the California suit and the instant suit are not parallel.

> 3    Curiously, neither party acknowledges that to prevail on a civil RICO claim, plaintiffs must do more than simply demonstrate that defendant engaged in the alleged predicate acts. *See, e.g., Williams Elec. Games, Inc. v. Barry, 2001 U.S. Dist. LEXIS 16412, 2001 WL 1104619, at * 1-3 (N.D.Ill. Sept. 18, 2001)* (denying the defendant's motion for summary judgment because disputed issues of fact existed with respect to, (1) whether a RICO "enterprise" existed, and (2) whether a "pattern of racketeering activity" was present).

[*10]    Even if the court concluded otherwise, abstention would not be warranted in the instant case. Assuming *arguendo* that the California suit and instant suit are parallel, exceptional circumstances do not exist to justify staying the instant dispute. In *Lumen, 780 F.2d at 694-695*, the Seventh Circuit articulated the following [HN3] ten factors that a district court can consider in deciding whether "exceptional circumstances" exist that would justify deference to the state courts under *Colorado River*: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

"The decision to abstain is based on an assessment of the totality of the circumstances." *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc., 180 F.3d 896, 900 (7th Cir. 1999)*. [*11]    Thus, the district court's decision whether to abstain should not rest on a "mechanical checklist" of the relevant factors, and the weight given to any particular factor will vary greatly from case to case, depending on the particular factual setting of the case at hand. *La Duke, 879 F.2d at 1559*, citing *Moses H.*

2003 U.S. Dist. LEXIS 9089, *

*Cone Memorial Hosp. v. Mercury Construction Corp., 460 U.S. 1, 16, 103 S. Ct. 927, 942, 74 L. Ed. 2d 765 (1983).*

The first and last factors are not applicable to the instant dispute. No property is at issue in the California suit, and there is no evidence that the federal claim is vexatious or contrived. To the contrary, the forum selection clause in the Operating Agreement mandates that all claims and counterclaims arising from that agreement be brought in a court in Chicago, Illinois.

Given the forum selection clause contained within the Operating Agreement, defendant cannot credibly claim that Chicago is an inconvenient forum. *See Finova Capital Corp., 180 F.3d at 899* (since Illinois was expressly selected as an acceptable forum for the resolution of disputes, "neither side can credibly claim that it [*12] is being forced to litigate in an inconvenient forum."). Thus, the second factor disfavors abstention.

The desire to avoid piecemeal litigation favors abstention. Arguably, plaintiffs' defense of the California suit will implicate many of the factual allegations underlying its Operating Agreement claims in the instant suit. Thus, the California and federal suits do overlap and involve similar issues. Nonetheless, a complete resolution of the state action will not necessarily dispose of plaintiffs' civil RICO claim. Moreover, as noted in *Evans Transp. Co. v. Scullin Steel Co., 693 F.2d 715, 717 (7th Cir. 1982),* [HN4] "it is not enough, to justify abstention, that a failure to stay the federal suit may result in judicial diseconomy--in having two active lawsuits instead of one." Accordingly, although this factor does favor abstention, the court's inquiry does not end here. *See AXA Corporate Solutions v. Underwriters Reinsurance Co., 2002 U.S. Dist. LEXIS 19407, 2002 WL 31260009, at *9* ("Piecemeal litigation, in and of itself, can hardly be called 'exceptional circumstances.'").

The fifth factor, source of governing law, disfavors abstention. Setting aside the fact that the Operating [*13] Agreement and the Employment Agreement provide for the application of Illinois law, and assuming that the California state court is capable of applying Illinois law to the parties' contract claims, Count VI of plaintiffs' claim is brought under civil RICO, which is governed by federal law. This is balanced by the sixth and eighth factors, however, because the parties do not dispute that the state court could exercise jurisdiction over plaintiffs' civil RICO claim if plaintiffs chose to assert that claim in the California suit. *See, e.g., Tafflin v. Levitt, 493 U.S. 455, 467, 110 S. Ct. 792, 107 L. Ed. 2d 887 (1990)* (holding that [HN5] state courts have concurrent jurisdiction to consider civil claims arising under RICO).

The seventh factor, the relative progress of the two lawsuits, does not favor abstention. Although discovery

has begun in the California suit, there is no evidence that the California suit is nearing resolution or that there are any pending or imminent dispositive motions. Defendant's reliance on *Norris v. Miller, 926 F. Supp. 776, 779 (N.D.Ill. 1996),* is thus misplaced. Moreover, under *Fed. R. Civ. P. 26(a)(1),* the parties should already [*14] have exchanged initial discovery material in the instant case.

Contrary to defendant's representation in his motion, the ninth factor, availability of removal, also disfavors abstention. The parties in the California suit do not have complete diversity, since Enfra and defendant are both California residents, and thus the California suit is not removable to federal court. As a result, if the instant case is stayed, plaintiffs will be precluded from adjudicating their claims in a federal court. *See J&A Sales and Marketing, Inc. v. J.R. Wood, Inc., 2002 U.S. Dist. LEXIS 6979, 2002 WL 653897 (N.D.Ill. 2002).* Moreover, the forum selection clause contained in the Operating Agreement prevents plaintiffs from raising counterclaims premised on the Operating Agreement in a non-Chicago forum, which further mitigates against granting a stay of the instant case.

Only one of the ten factors outlined above clearly favors abstention in the instant case: the order in which jurisdiction was obtained. As noted above, the California suit was filed in October 2002, whereas the instant suit was filed in December 2002. When considered in light of the seventh factor, which examines the relative progress of the two [*15] suits, however, this relatively short time differential carries little weight. *See also Finova Capital Corp., 180 F.3d at 900* (fact that state action was filed four months before federal action did not support abstention).

According to the Seventh Circuit, [HN6] "If there is any substantial doubt that the parallel litigation will be 'an adequate vehicle for the complete and prompt resolution of the issues between the parties,' it would be a 'serious abuse of discretion' for the district court to stay or dismiss a case in deference to the parallel litigation." *AAR International, Inc., 250 F.3d at 518,* quoting *Moses H. Cone, 460 U.S. at 28.* As discussed above, because plaintiffs have asserted claims in the instant case arising solely under the Operating Agreement that defendant denies are related in any way to his claims in the California suit, as well as a RICO claim that involves matters unrelated to the Employment Agreement involved in the California suit, the resolution of the California suit will not necessarily resolve all of the claims and issues before this court. The court thus concludes that abstention is not warranted in the instant [*16] case.

### CONCLUSION

2003 U.S. Dist. LEXIS 9089, *

For the reasons stated herein, defendant's motion to stay the instant suit is denied.

**ENTER: May 15, 2003**

**Robert W. Gettleman**

**United States District Judge**

LEXSEE 2002 U.S. DIST. LEXIS 6979

**J & A SALES AND MARKETING, INC., Plaintiff, vs. J.R.WOOD, INC., a Califor-nia corporation, RONALD VANTZ, a California resident, and CAROLINE WAT-KINS, a California resident, Defendants.**

**01 C 6749**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2002 U.S. Dist. LEXIS 6979*

**April 18, 2002, Decided**
**April 19, 2002, Docketed**

**DISPOSITION:** [*1] Defendants' motion to dismiss or stay federal action denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff purchaser sued defendants, manufacturer and employees, alleging tortious interference with prospective economic advantage and tortious interference with contract. The manufacturer moved to dismiss or stay the federal action pending the outcome of a state court action filed by the manufacturer.

**OVERVIEW:** The purchaser acquired the assets of a company that had a contractual relationship with the manufacturer. The manufacturer refused the purchaser's request to transfer the contract to the purchaser or to cease contact with the retail customers. The manufacturer contacted customers, allegedly causing the customers to terminate relationships with the purchaser. The manufacturer filed suit in state court regarding money owed under the contract. The court determined that the manufacturer failed to show that the federal case involved exceptional circumstances contemplated under Colorado River, and the court remained obligated to exercise jurisdiction. The two cases were not parallel, because the resolution of the state case would not address all the issues involved in the federal action. Also, the majority of the Colorado River factors directed against staying the action.

**OUTCOME:** The court denied the manufacturer's motion to dismiss or stay.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Federal & State Interrelationships > Abstention*
[HN1] Federal courts have an "unflagging obligation" to exercise the jurisdiction granted to them. However, in exceptional circumstances a federal court may decline to exercise jurisdiction when a parallel action in state court is also pending, considering wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation. A stay is only appropriate in limited circumstances; therefore, the task for the court is not to find reasons to support the exercise of federal jurisdiction but rather to determine whether the "clearest justifications" and "exceptional circumstances" exist to warrant abstention from jurisdiction. It is an abuse of discretion for the federal court not to exercise its jurisdiction if there is any doubt that the state litigation will be an adequate vehicle for the complete resolution of the issues between the parties. Any doubt about the parallel nature must be resolved in favor of exercising jurisdiction.

*Civil Procedure > Federal & State Interrelationships > Abstention*
[HN2] In certain narrow circumstances, federal courts should relinquish their jurisdiction in favor of pending state cases, even though they do not fall under the ambit of recognized abstention doctrines.

*Civil Procedure > Federal & State Interrelationships > Abstention*

[HN3] In the context of the Colorado River abstention doctrine in the Seventh Circuit, a stay, instead of dismissal, is the appropriate procedure.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Waiver & Preservation*
[HN4] Arguments raised in a reply brief that were not addressed in the original motion are waived.

*Civil Procedure > Federal & State Interrelationships > Abstention*
[HN5] As a threshold issue in a Colorado River-type case, the court must determine whether the state and federal actions are so similar that they can be deemed parallel. To be considered parallel, actions must be contemporaneous litigations of substantially the same issues by substantially the same parties. However, the suits need not be perfectly identical. The court may also consider whether the state action is more comprehensive, such that granting of relief in the state forum would dispense with the claims in the federal forum. The court is limited in its consideration to the issues raised by the state action at the time the stay is requested.

*Civil Procedure > Federal & State Interrelationships > Abstention*
[HN6] For Colorado River to apply, exact replication of the parties is not required.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > Concurrent Jurisdiction*
*Civil Procedure > Federal & State Interrelationships > Abstention*
[HN7] The Colorado River factors are: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) the source of governing law, state or federal; (6) whether the state court will protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. The weight given any one factor depends on the case, and no one factor is outcome-determinative. Finally, the balance should be heavily weighted in favor of exercising jurisdiction.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview*
*Civil Procedure > Federal & State Interrelationships > Abstention*
[HN8] In the Colorado River analysis, although the absence of a federal question weighs against the exercise of jurisdiction, an action based only on state law will not be stayed based on this factor alone.

*Civil Procedure > Federal & State Interrelationships > Abstention*
[HN9] In the Colorado River analysis, piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.

*Civil Procedure > Federal & State Interrelationships > Abstention*
[HN10] The fourth Colorado River factor, the order in which jurisdiction was obtained, has little independent relevance. This is especially true in cases in which the respective complaints are filed within hours of each other, making priority of filing mostly serendipitous.

*Civil Procedure > Federal & State Interrelationships > Abstention*
[HN11] In the Colorado River analysis, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.

**COUNSEL:** For J & A SALES AND MARKETING, INC., plaintiff: Reed S. Oslan, J. Chad Mitchell, Kirkland & Ellis, Chicago, IL.

For J & A SALES AND MARKETING, INC., plaintiff: Joseph Daniel Ryan, Law Offices of Joseph D. Ryan, P.C., Highland Park, IL.

For J.R. WOOD, INC., RONALD VANTZ, CAROLINE WATKINS, defendants: Terrence Patrick Canade, Lord, Bissell & Brook, Chicago, IL.

**JUDGES:** Charles P. Kocoras, United States District Court.

**OPINION BY:** Charles P. Kocoras

**OPINION**

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendant, J.R. Wood, Inc., to either dismiss or stay this federal action. For the reasons discussed below, the motion is denied.

## BACKGROUND

J & A Sales ("J & A"), the plaintiff, filed a complaint in this action on August 29, 2001. The complaint alleges the following facts. J & A is an Illinois corporation in the business of manufacturing and selling organic food products. J.R. Wood ("Wood") is a California corporation in the business of bottling, manufacturing, and producing food products. From 1999 to August 2001, AAlta [*2] Organic Food Company ("AAlta") had a contractual relationship with Wood, by which Wood manufactured the KOGEE/KOGI ("KOGEE") product for AAlta and acted as its agent by distributing the product and collecting payments due from purchasers. KOGEE is a coffee drink sold to many large grocery chains including Kroger, Dominick's, Whole Foods, and Jewel, among others.

In July 2001, J & A purchased the assets of AAlta. J & A notified Wood of the purchase the day it took place. Some time after the purchase, J & A contacted Wood in order to negotiate a transfer of the AAlta contract to J & A. Wood refused to transfer the contract. J & A then made requests to Wood asking the company to cease contact with J & A's KOGEE customers. Wood refused this request and informed J & A that it would continue to contact KOGEE purchasers.

Despite repeated requests from J & A, Wood continued to contact KOGEE customers. For instance, Wood allegedly contacted Kroger claiming that Wood was due funds that J & A had claimed. As a result, Kroger stopped payment on a check to J & A. Kroger then canceled several orders with J & A and ultimately stopped purchasing KOGEE products altogether. Wood made similar contacts [*3] with Allegro/Whole Foods and KEHE, other J & A customers, ultimately causing both purchasers to terminate relationships with J & A.

Based on the above facts, J & A seeks recovery under two tort causes of action: tortious interference with prospective economic advantage and tortious interference with contract.

Almost simultaneous to the filing of this action, Wood filed a complaint against AAlta on August 29, 2001 in the Merced County Superior Court in California ("the California action"). Wood later amended the complaint to add J & A as a named defendant. That complaint concerned a dispute over money owed to Wood under the contract between Wood and AAlta for the production of KOGEE. Wood's complaint in California state court alleged breach of contract, common counts, con-

version, and interference with economic relationship. Wood now moves to stay or dismiss this proceeding pending the outcome of the California state court action.

## LEGAL STANDARD

[HN1] Federal courts have an "unflagging obligation" to exercise the jurisdiction granted to them. *Colorado River Water Conservation District v. United States, 424 U.S. 800, 817, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976).* However, [*4] in exceptional circumstances a federal court may decline to exercise jurisdiction when a parallel action in state court is also pending, considering "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Id. A stay is only appropriate in limited circumstances; therefore, the task for the court is not to find reasons to support the exercise of federal jurisdiction but rather to determine whether the "clearest justifications" and "exceptional circumstances" exist to warrant abstention from jurisdiction. *AAR Int'l., Inc. v. Nimelias Enter., 250 F.3d 510, 517 (7th Cir. 2001).* It is an issue of discretion for the federal court not to exercise its jurisdiction if there is any doubt that the state litigation will "be an adequate vehicle for the complete resolution of the issues between the parties." *AAR Int'l., 250 F.3d at 520,* quoting *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 28, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983).* Any doubt about the parallel nature must be resolved in favor of exercising jurisdiction. Id.

## DISCUSSION

In [*5] its motion, Wood asks this court to grant a stay, or in the alternative to dismiss, these proceedings in favor of the California action. [1] They argue that this case exhibits the exceptional circumstances discussed in Colorado River. [2] *424 U.S. at 817.* That case recognized that, [HN2] in certain narrow circumstances, federal courts should relinquish their jurisdiction in favor of pending state cases, even though they do not fall under the ambit of recognized abstention doctrines. *Id. at 814.*

---

1    Although Colorado River specifically addressed the power of the district court to dismiss an action in the face of a parallel state proceeding, this circuit has held that [HN3] a stay, instead of dismissal, is the appropriate procedure. *Rosser v. Chrysler, 864 F.2d 1299, 1308 (7th Cir. 1988).* A stay keeps the federal forum available if the state court action does not result in a final judgment. Id.

2    In its reply, Wood also raises a second, unrelated argument: that because the original bottling agreements (contracts between Wood and AAlta) provided that all disputes are governed by Cali-

2002 U.S. Dist. LEXIS 6979, *

fornia law and must be heard in California courts, this court has no jurisdiction to hear the case at all. Even assuming that the forum-selection clause in the bottling agreements applied to J & A, which was not a party to them and to whom they were never assigned, [HN4] arguments raised in a reply brief that were not addressed in the original motion are waived. *Marie O. v. Jim Edgar, 131 F.3d 610, 614 n.7 (7th Cir. 1997)*. The notion supporting this rule is that the opposing party should be given an opportunity to respond to new arguments. *Wilson v. Giesen, 956 F.2d 738, 741 (7th Cir. 1992)*. Wood did not raise the issue of the forum-selection clause in its original memorandum in support of the motion to stay, and we will not consider any argument they may have based upon it. See *Hentosh v. Herman M. Finch Univ.. of Health Sciences, 167 F.3d 1170, 1173 (7th Cir. 1999)*.

[*6]  [HN5] As a threshold issue in a Colorado River-type case, the court must determine whether the state and federal actions are so similar that they can be deemed parallel. *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc. 962 F.2d 698, 700 (7th Cir. 1992)*. To be considered parallel, actions must be contemporaneous litigations of substantially the same issues by substantially the same parties. Id. However, the suits need not be perfectly identical. *Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1288 (7th Cir. 1988)*. The court may also consider whether the state action is more comprehensive, such that granting of relief in the state forum would dispense with the claims in the federal forum. *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc., 180 F.3d 896, 898 (7th Cir. 1999); Lumen Constr., Inc. v. Brant Constr. Co., Inc., 780 F.2d 691, 695 (7th Cir. 1985)*. The court is limited in its consideration to the issues raised by the state action at the time the stay is requested. *Parvin E. Day v. Union Mines, Inc., 862 F.2d 652, 656 (7th Cir. 1988)*.

At first blush, the parties in this [*7] case seem not substantially similar. The federal action involves J & A, Wood, and two Wood employees, Ronald Vantz and Caroline Watkins. In contrast, the California action includes Wood, J & A, AAlta, an AAlta employee named Mark Wolke, and 99 other unnamed defendants. A close look at the two complaints, however, reveals that their overlapping portions involve mainly J & A and Wood, despite the nominal presence of other parties. As stated above, [HN6] exact replication of the parties is not required. *Interstate Material, 847 F.2d at 1288*. The parties in this action, although certainly not identical, are substantially similar. We therefore turn to the second prong of the parallelism analysis: the similarity of the issues presented by the two cases.

The instant case involves two causes of action: tortious interference with prospective economic advantage and tortious interference with contract. Both claims are based on what J & A perceives as Wood's interference with J & A's relationships with its retail purchasers *after* it refused to transfer the AAlta contract to J & A. Overall, the California complaint is much broader, but it primarily focuses on Wood's contractual [*8] relationship with AAlta, which was never extended to include J & A. Many of the allegations within that complaint have no application to J & A. The eighth cause of action, however, is directly implicated by the federal case, in that it seeks relief for interference by the defendants, including J & A, with contracts or relationships with Wood customers in connection with payments Wood claims are due under its bottling agreements with AAlta. J & A's complaint, by contrast, goes beyond the disputes over payments allegedly owed under the AAlta agreements. It includes allegations that Wood's actions soured any relationship that J& A had with these customers, whether in connection with the AAlta products or not. Although both actions to some degree involve the Wood-AAlta contract, the federal action is not a complete subset of the state action, and the resolution of the state case in its current posture will not address all the issues involved in the federal action. Cf. *Day, 862 F.2d at 659*. Therefore, even though the two cases share some common issues, they do not bear the substantial resemblance necessary to render them parallel.

Furthermore, even if Wood could get past [*9] the threshold requirement of parallelism, an analysis of the factors enumerated in Colorado River and its progeny show that this case does not involve the exceptional circumstances that would necessitate a stay of the federal action. *Sverdrup Corp. v. Edwardsville Cmty. Sch. Dist., 125 F.3d 546, 549-50 (7th Cir. 1997)* (tracing the development of the ten factors used to determine whether exceptional circumstances are present). [HN7] The factors are: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) the source of governing law, state or federal; (6) whether the state court will protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Caminiti, 962 F.2d at 701*. The weight given any one factor depends on the case, *Cone, 460 U.S. at 16*, and no one factor is outcome-determinative. *Caminiti, 962 F.2d at 701*. [*10] Finally, the balance should be heavily weighted in favor of exercising jurisdiction. *Cone, 460 U.S. at 16*.

2002 U.S. Dist. LEXIS 6979, *

The first and tenth factors have no application here given the facts of this case. There is no indication that the California court has assumed jurisdiction over property nor that it would have occasion to do so. The parties are not engaged in a battle over the existing bottles of KOGEE; they seek only damages and injunctive relief. Neither is there evidence that the federal claim is either vexatious or contrived. In fact, the almost simultaneous filings of the respective complaints speaks to the genuineness of the dispute by both parties.

Three of the remaining eight factors--the second, fifth, and sixth--favor the grant of a stay. The second factor looks to the convenience of the federal forum for the parties. *AAR Int'l., 250 F.3d at 523.* J & A is the only party located in Illinois. All three defendants in the federal case are located in California. In addition, AAlta was a California corporation; and Wood employees, who may be witnesses, are located in California. J & A argues that many of the witnesses from J & A's retail customers are located [*11] throughout the Midwest, making Illinois a more convenient forum. Although deposing witnesses throughout the Midwest may be more convenient if Illinois is the forum, it is significantly less convenient to all three defendants in the case. However, Wood points out that the potential Midwest witnesses will be required to travel regardless of whether the action is in Illinois or California, across several states in some cases. Therefore, this factor weighs in favor of staying the present action.

The fifth factor, whether state or federal law governs, would indicate a like outcome. The parties dispute whether Illinois or California law controls, but one thing is clear: both complaints are predicated wholly on state law. [HN8] Although the absence of a federal question weighs against the exercise of jurisdiction, an action based only on state law will not be stayed based on this factor alone. *Sverdrup, 125 F.3d at 550.*

The sixth factor, whether the state court will protect the federal plaintiff's rights, is related to the fifth, and also weighs in favor of a stay. These cases are based only in state tort and contract law and do not involve rights or protections provided only [*12] in federal law. The federal interest is accordingly "far from overwhelming." *Finova, 180 F.3d at 900.* Although the parties dispute which forum's law will apply to this action, where all of the actions are based on state law claims the federal court's interest is not as significant as it is when a plaintiff asserts a federal right. In addition, we note that California has a significant interest in a dispute involving corporations doing business within the state, and where many of the witnesses are located within the state. Therefore, this factor weighs in favor of a stay.

Consideration of the remaining five factors, however, directs against staying this action. The third factor emphasizes the desirability of avoiding piecemeal litigation. The Seventh Circuit has adopted the definition of piecemeal litigation from the Ninth Circuit, stating that [HN9] "piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Day, 862 F.2d at 659,* quoting *Am. Int'l. Underwriters (Philippines), Inc., v. Continental Ins. Co., 843 F.2d 1253, 1258 (9th Cir. 1988).* The California [*13] and federal actions do overlap, and there is some risk that the courts may arrive at conflicting results. However, J & A's complaint focuses not on the AAlta agreements but on its own contracts with its retail customers and Wood's actions, which allegedly caused breaches of those independent agreements. Because the two complaints only partially coincide, even a complete resolution of the state action would not dispose of all of the claims of the federal action. *Lumen, 780 F.2d at 695.*

The Seventh Circuit has stated that [HN10] the fourth factor, the order in which jurisdiction was obtained has little independent relevance. *Evans Transp. Co. v. Scullin Steel Co., 693 F.2d 715, 718 (7th Cir. 1982).* This is especially true in cases like this one, in which the respective complaints are filed within hours of each other, making priority of filing mostly serendipitous. In fact, the Evans court reversed the dismissal of an action when the state court action had been filed a month before the federal action. Id. Thus, this factor counsels in favor of an exercise of jurisdiction.

The seventh factor considers the relative progress of the state and federal cases. [*14] It is closely linked to the fourth factor, and it likewise indicates that we should not stay this action. *Cone, 460 U.S. at 21* (stating that [HN11] "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions"). The California suit was not even two hours old when the federal suit was filed; at the time the stay was requested, J & A had not even been served in the California case. The state case simply did not have enough time to be "well underway" when the federal action commenced. *Evans, 693 F.2d at 718.* Our consideration of this case cannot duplicate or set back progress that has not yet been made.

The eighth factor, the presence or absence of concurrent jurisdiction, weighs against a stay. *Caminiti, 962 F.2d at 703.* Subject matter jurisdiction is clearly concurrent in these cases: the California court has jurisdiction based on the state law claims and the federal court has jurisdiction by virtue of the parties' diversity. Whether California has personal jurisdiction over J & A, on the

other hand, is not as clear. Therefore, this factor supports [*15] our exercise of jurisdiction.

Finally, we consider the ninth factor: the availability of removal. If this court stays or dismisses this action in favor of the California state court, both parties agree that J & A will be barred from removing the case to federal court. The California action includes plaintiffs and defendants who share California residency, destroying the possibility of diversity jurisdiction in that case. If this case is stayed, J & A will be precluded from adjudicating in a federal forum. *Evans, 693 F.2d at 719.*

In sum, the majority of factors involved and their relative relevance to this case, combined with the heavy presumption in favor of exercising jurisdiction, swing the balance away from granting a stay in this case. We conclude that even if the actions were parallel, Wood has not shown that this case involves the exceptional circumstances contemplated in Colorado River, and we remain obligated to exercise our jurisdiction.

**CONCLUSION**

For the aforementioned reasons, the motion to stay is denied.

Charles P. Kocoras

United States District Court

Dated: April 18, 2002

# EXHIBIT B

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| VILLAGE OF MOUNT PROSPECT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08 CH 1284  12821 |
| v. | ) | (Consolidated with 08 CH 12059) |
| | ) | |
| TOD CURTIS, et al., | ) | |
| | ) | |
| Defendant. | ) | |

## AGREED ORDER

This matter coming to be heard upon status and by agreement of the parties, the Court being fully advised in the premises,

**IT IS HEREBY ORDERED THAT:**

1.    The temporary restraining order entered by this Court on April 10, 2008, and extended thereafter, shall be modified to permit Ye Olde Town Inn to resume operations on the limited basis set forth in this Order.

2.    Hot dogs, Italian beef, bratwursts, polish sausages, and popcorn will be the only food served by Ye Olde Town Inn. The hot dogs, Italian beef, bratwursts, and polish sausage will be of pre-cooked variety and warmed in steamers that will be located behind the bar. The hot dogs, Italian beef, bratwursts, and polish sausage will be stored in the refrigerated coolers just below the food steamers and they will be taken from the packages and placed into the steamers without actually being touched by the food handler. The hot dogs, Italian beef, bratwursts, and polish sausage must be pre-heated to 165 degrees Fahrenheit before service. A probe type thermometer shall be available on site to test food temperature to ensure that 165 degrees Fahrenheit temperature is maintained. A fork or tongs will be used to remove the bread

which will be of the "pre-cut" bun variety. Disposable gloves must be used to minimize contact with food (holding the bun or roll as it is filled). The condiments will be of the individual pre-packaged serving type and will be kept in a container on the bar. The Nesco oven is enameled and enamel paint chips may contaminate food; therefore it may be used as a double boiler only and is not permitted to be in direct contact with food. Single service items (paper plates and napkins) must be stored to protect against contamination. The sinks on the west bar will be used for food handler and food utensil cleaning. The triple basin sink must be washed, rinsed and sanitized prior to use for utensil washing. Hand soap and dispensed towels must be provided at the triple basin sinks for hand washing. The popcorn will be prepared in the popcorn machine on the west wall.

3.     Within 30 days, Defendants will install a third sink to cause the premises to be in compliance with any sanitary and food handling applicable regulations with which they do not currently comply. The Village may conduct inspections, according to all applicable statutes and Village ordinances. This paragraph shall not be interpreted to enlarge or constrict the Village's inspections rights as provided under the Village's ordinances.

4.     Not later than 4:00 p.m. on ~~June 15~~, July 7, 2008, Defendants will cause the general contractor, who made all recent repairs to the restaurant, to complete and submit all paperwork necessary for a building permit.

5.     Not later than 3:00 p.m. on ~~June 16~~, July 7, 2008, Defendants will fill in the hole with concrete that was left open to allow the Village to inspect the footing for the post supporting the back roof.

6.    If any of the conditions set forth in this Agreed Order are not met, the Village may petition the Court to post the premises as closed for business based on violations of the Agreed Order.

7.    This Order is without prejudice to any party's rights to seek or obtain other or different relief in this action.

8.    This matter shall be scheduled for status on _September 9_, 2008, at _10:00_ a.m./p.m.

9. All electrical items Identified in the Village's Verified Complaint for TRO and Preliminary Injunction shall be remedied for code compliance within ninety (90) days.

**SO ENTERED:**

**ENTERED**

JUN 26 2008

JUDGE

Honorable RICHARD J. BLIEK - 1585

10. Upon twenty-four (24) hours notice, the Village shall have the right to inspect the premises of the Ye Olde Town Inn for items Identified in the Village's Verified Complaint.

and 5-18 West Busse

Firm ID #32715
William M. McErlean
BARNES & THORNBURG LLP
One N. Wacker Drive, Suite 4400
Chicago, IL 60606
(312) 357-1313

11. Curtis shall have until July 10, 2008 to file an Answer to the Village's Verified Complaint.

~~12. A hearing for oral argument on Curtis' Motion to Quash the Administrative Warrant is set for~~ OTB gm

13. The Preliminary Injunction hearing is stayed and the hearing date of July 9, 2008 at 2:00 pm is/stricken.

14. Nothing in this Agreed Order shall be construed as an admission by either party.

CHDS01 DTB 467770v3