IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TOD CURTIS, individually and as beneficiary, FIRST UNITED TRUST COMPANY, as Trustee under Trust No. 10510, and ELTO RESTAURANT INC., an Illinois corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 08 C 3527 |
| IRVANA K. WILKS, Village of Mount Prospect Mayor and Local Liquor Control Commissioner, MICHAEL E. JANONIS, Village Of Mount Prospect Manager, WILLIAM COONEY, Village of Mount Prospect Economic Director, WILLIAM SCHROEDER, Village of Mount Prospect Building Commissioner, ROBERT ROELS, Village of Mt. Prospect Environmental Health Manager, FRANK KRUPA, Village of Mount Prospect Environmental Health Inspector, OZ DEVELOPMENT, LLC and the Village of Mount Prospect, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Guzman

Magistrate Judge Nolan |
| Defendants. | ) | |

**DEFENDANTS WILKS, JANONIS, COONEY, SCHROEDER, ROELS, KRUPA AND THE VILLAGE OF MOUNT PROSPECT'S REPLY IN FURTHER SUPPORT OF THEIR MOTION REQUESTING THAT THE COURT ABSTAIN FROM EXERCISING JURISDICTION OVER THE COMPLAINT**

Defendants IRVANA WILKS, MICHAEL JANONIS, WILLIAM COONEY, WILLIAM SCHROEDER, ROBERT ROELS, FRANK KRUPA and the VILLAGE OF MOUNT PROSPECT ("Defendants"), by and through their attorneys, KLEIN, THORPE AND JENKINS, LTD., reply to Plaintiff's response to their motion requesting that the Court abstain from exercising jurisdiction over Plaintiffs' complaint, stating as follows:

iManage:219654_1

**Introduction**

In their motion requesting abstention, based on the *Colorado River* doctrine, Defendants argued that this Court should refrain from exercising its jurisdiction over the claims set forth in Plaintiff's (or "Curtis") federal court complaint ("Complaint") pending the resolution of two matters currently pending in the Circuit Court of Cook County, Illinois. These state court lawsuits are sufficiently parallel to the instant matter and exceptional circumstances exist to warrant this Court applying the *Colorado River* abstention doctrine.

In his response, Curtis argues that Defendants cannot satisfy either of the two-prongs used to evaluate application of the *Colorado River* doctrine. Curtis asserts absence of parallel litigation because the claims of an unlawful enterprise under the civil RICO statute and multiple civil rights violations alleged in the Complaint will not be resolved in the proceedings pending in the Circuit Court. Specifically, Curtis argues his claims, "are independent of the fair market value of Plaintiffs' property and whether the Village's offer to purchase the property lacked good faith (the issues in the state court condemnation proceeding) and whether ordinance violations exist in Plaintiffs' restaurant on that property (the central issue in the state action alleging code violations)." *Response* at 7. Curtis further indicates that, "the ten factors for the Court's consideration of whether exceptional circumstances exist under *Colorado River* weigh heavily against abstention in this matter." *Id*. at 15.

The Court should grant Defendants' request for a *Colorado River* abstention because a careful consideration of the requirements Curtis must satisfy to prevail on his RICO and civil rights claims demonstrates that resolution of the injunction and

condemnation actions could have a decisive effect on the federal court action. The essence of the RICO claim is that Defendants had the requisite *mens rea* for their purportedly illegal actions. The equal protection claim requires proof that personal *animus* prompted Defendants' actions against the Subject Property (or "YOTI"). The state court litigations will almost certainly resolve the issues of Defendants' alleged motivations that are central to Plaintiffs' claims, and *res judicata* would apply to the instant matter. For this reason, the parallelism between state and federal court proceedings necessary for abstention under *Colorado River* exists. Close scrutiny of Curtis' conclusion that exceptional circumstances do not exist to justify abstention reveals the weakness of his arguments. A concern over piecemeal and duplicative litigation, the fact that the Circuit Court originally obtained jurisdiction over the disputes between the parties, and policy considerations raised by vexatious or contrived federal court litigation should lead this Court to apply the *Colorado River* doctrine.

I.  **Curtis' RICO And Equal Protection Claims And The Village's Action For Injunctive Relief Should Be Considered As Parallel Litigations**

   A.  **Curtis Must Demonstrate That Illegal Intent Motivated Village Officials' Enforcement Of Village Code Provisions At The Subject Property To Prevail On His RICO Claim**

Curtis' RICO claim, brought under 18 U.S.C. §§ 1962 (c) and (d), must establish (1) that a person (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate commerce. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275 (1985). "Racketeering activity" or predicate acts, are ones indictable under any one of a long laundry list of offenses enumerated in 18 U.S.C. § 1341(1). *American Auto Accessories,*

*Inc. v. Fishman*, 175 F.3d 534, 542 (7th Cir. 1999); *Midwest Grinding Company, Inc. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992). To prove racketeering activity, "the plaintiff must prove the intent required to establish the underlying predicate offense." *D.H. Blair & Co., Inc. v. City of New York*, 694 F.Supp. 1069, 1079 (S.D.N.Y. 1988).

Curtis' civil RICO action presents a lengthy list of allegations that Defendants engaged in inspections of and identified violations of Village building, property maintenance, fire prevention and health code provisions at YOTI in order to harass and intimidate him as part of the scheme to force him to relinquish his property. The following allegations concern the essence of Curtis' RICO claim:

(a) the individual Defendants employed "endless harassing inspections of the Property," *Complaint* at ¶ 1;

(b) "each time Curtis takes a public stand and exercises his right to free speech or files a suit to protect his rights, Village officials lash out and abuse their authority and taxpayer funds by a *spiral of increasing harassing and needless inspections*, citing conditions in the restaurant and Property, many of which were longstanding and caused by the Village's conduct and refusal to pay for damages it caused, and more still that were nothing more than nonconforming but legal uses that often exist in older buildings," *Complaint* at ¶ 3 (emphasis added);

(c) Village officials obtained an administrative search warrant to inspect the Subject Property in the spring of 2008 to promote their scheme of harassment and intimidation against Curtis, *Complaint* at ¶ 3;

(d) the enterprise and scheme of Village officials to push Curtis off his property that has lasted almost ten years "would culminate in endless inspections and harassments, and the ultimate closing of the Plaintiff's business," *Complaint* at ¶ 30;

(e) when Curtis complained that the development of adjoining property caused numerous trespasses on and substantial damages to the Subject Property, the individual Defendants caused more inspections of the restaurant with citations issued for Code violations, *Complaint* at ¶ 52;

(f) when Curtis announced his intention in November 2007 to develop the Subject Property, the individual Defendants "pursuant to their scheme

    reacted and retaliated by increasing the number and intensity of inspections at YOTI, culminating in obtaining without notice a warrant to inspect the premises in a Gestapo-like raid on YOTI by twelve inspectors in March of 2008," *Complaint* at ¶¶ 79-81; and

 (g) "since 2005, the Village Defendants, pursuant to their scheme, have used multiple Village departments to conduct repeated and unjustified inspections to pressure Plaintiffs to sell the Property and drive Plaintiffs out of business and out of the Village, *Complaint* at ¶ 97.

The allegations characterizing Village efforts to enforce building, property maintenance, fire prevention and health code provisions at the Subject Property as an enterprise and scheme to injure Curtis and drive him out of Mount Prospect reaches a crescendo in ¶¶ 97 – 127 where Plaintiffs essentially allege that every inspection conducted and every code violation identified at YOTI during 2007 and 2008 was intended solely to harass and intimidate Curtis.

  **B.** **Curtis' Equal Protection Claim Alleges That Defendants Subjected YOTI To Unnecessary Code Enforcement Actions In Promotion Of Irrational And Discriminatory Purposes**

  Plaintiffs' equal protection claim fails to identify a comparable group of property owners who have not been similarly subjected to Village Code enforcement actions. Further, Plaintiffs cannot and do not allege membership in a protected class. Therefore, Plaintiffs' claim must be a group-of-one equal protection action. To prevail on such a claim, a plaintiff must show that the allegedly violative conduct of a governmental entity was motivated by personal *animus* and that no rational basis existed for the actions. *See Cruz v. Town of Cicero, Illinois*, 275 F.3d 579, 587 (7th Cir. 2001); *Lauth v. McCollum*, 424 F.3d 631, 634 (7th Cir. 2005).

Plaintiffs' allegations concerning Defendants' intentions for subjecting YOTI to inspections and citations for violations of various Village Code provisions include, but are not limited to:

(a)  instead of uniformly enforcing the regulations of the Village Code, Defendants have instead subjected Plaintiffs to intentional discrimination by virtue of their selective enforcement of Village Code regulations, *Complaint* at ¶ 145;

(b)  Defendants selectively enforced Village Code provisions for reasons of a personal nature unrelated to the duties of Defendants' positions with the Village, *Complaint* at ¶ 146; and

(c)  Defendants' selective enforcement of the Village Code and continuing series of harassing and unmerited inspections have forced Plaintiff to expend unnecessary resources and damaged the Property by lowering the market value of the Property, thus pressuring Plaintiffs to sell the Property or settle the Village's current condemnation action for an artificially low amount, *Complaint* at ¶ 149.

Plaintiffs suggest that Defendants used Code enforcement as a pretext to wage a vendetta against Curtis and his property. Their contention is that, such conduct, if proven, is not rationally-related to a legitimate governmental purpose; and therefore, Defendants would be liable for violating Curtis' equal protection rights.

### C. Resolution Of The Circuit Court Action For Injunctive Relief Will Address And Resolve Whether The Village's Code Enforcement Actions At YOTI Were Reasonable And Justified

The Village's action for injunctive relief asks the Circuit Court to enter an order requiring the Defendants[1] to abate numerous Code violations and, in the event Defendants' abatement efforts fail, the Village asks for an order directing Defendants to vacate the Subject Property and to keep all persons not involved in the remediation of Code violations off the property until such time as the violations have been corrected to

---

[1] The defendants in the action for injunctive relief are the same plaintiffs who filed the instant matter in the United States District Court for the Northern District of Illinois, Eastern Division.

the satisfaction of the Village. *Verified Complaint for Injunctive Relief* at p. 14. The Village alleges two chief reasons for seeking such injunctive relief: (1) despite the Village's extensive efforts to obtain Code compliance at YOTI, Curtis has failed to correct serious Code violations which jeopardize the health and safety of neighboring occupants and the public and (2) the Village has a clear and ascertainable right to protect the public, Defendants and their customers, employees and occupants of the Subject Property. *Id*. at ¶¶ 21-22. Thus, the Village asserts its motivation for taking Code enforcement action at YOTI is an obligation to protect the citizens of Mount Prospect.

The Village alleges that extensive and dangerous building, property maintenance, fire prevention and health code violations were identified on the Subject Property beginning in early 2007. *Verified Complaint for Injunctive Relief* at ¶¶ 6-7. The complaint for injunctive relief lists the Code violations discovered at the Subject Property along with Village efforts to have the violations remedied. *Id*. at ¶19. Further, the Village summarizes the notices of Code violations provided to Defendants in an effort to gain compliance. *Id*. at ¶ 19. The Village also alleges that on numerous occasions Defendants refused to allow reinspections of the Subject Property intended to determine the extent to which Code violations had been remedied. *Id*. at ¶¶ 8B, 8C, 8D and 19. Defendants' recalcitrance necessitated the Village obtaining an administrative search warrant so that inspections could take place. *Id*. at ¶ 10.

The hearing on the action for injunctive relief will consider the reasonableness of the Village's Code enforcement efforts at the Subject Property. This inquiry by the Circuit Court will, by definition, address the intentions and motivations of Village officials for the inspections and enforcement measures at YOTI that Curtis has

characterized in both the RICO and equal protections claims as being illegal, discriminatory and irrational in nature. Curtis cannot prevail on either the RICO or equal protections claims without proving such motivations on the part of Defendants. Thus, the Circuit Court's ruling on the Village's action for injunctive relief could resolve issues fundamental to Curtis' claims in the instant matter.

II.  **The Circuit Court Condemnation Litigation Will Address Curtis' Claim That Defendants Have Violated His Constitutional Right To Just Compensation For The Taking And Damaging Of Private Property**

Curtis argues in his response that the condemnation proceeding will resolve none of the claims raised by the Complaint that "focus on Defendants' acts in concert with one another over the last decade that violate the RICO statute and violate Plaintiffs' constitutional rights." *Response* at 7. According to Plaintiffs, the issues raised in the instant matter do not involve the issues raised in the Village's eminent domain action against the Subject Property. *Id*.

The Complaint specifically alleges that Defendants' actions in continuing "to wrongfully enforce the provisions of the Mount Prospect Village Code against Plaintiffs" results in deprivation of Plaintiffs' constitutional rights, *inter alia*, "to *just compensation for the taking and damaging of private property*." *Complaint for Relief of civil Rights and RICO Violations* at ¶ 153 (emphasis added). The plain language of the Complaint clearly asserts a violation of the just compensation clause of the Fifth Amendment that "proscribes taking without just compensation." *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194, 105 S.Ct. 3108 (1985). The Circuit Court condemnation action addresses the issue of the just compensation to which Curtis is entitled as a result of the Village taking title to the

Subject Property. Abstention under the *Colorado River* doctrine is appropriate because the issue of just compensation will be fully and completely resolved in the Circuit Court.

The condemnation litigation is parallel to the instant matter for an additional reason. The RICO allegations read like a screed that imputes to Defendants illegal, arbitrary and personal motivations for engaging in a decade-long campaign to rid Mount Prospect of Tod Curtis by taking the Subject Property through forced sale or judicial taking for far less than market value. The traverse that Curtis has filed alleges that the Village is not acquiring the Subject Property for a public purpose. This means that Curtis is actually litigating the reasons and motives underlying Village officials' decision to acquire the Subject Property through the exercise of eminent domain. Resolution of the issue of whether the Village seeks to acquire the Subject Property for legally justified reasons goes to the basic allegations of the RICO and civil rights claims that Defendants have engaged in a scheme of illegal actions singularly motivated by personal *animus* against Curtis. The condemnation proceedings are so parallel as to necessitate this Court invoking the *Colorado River* doctrine and abstaining from exercising jurisdiction pending resolution of the Circuit Court action.

### III. The Law Of *Res Judicata* Supports The Application Of The *Colorado River* Abstention Doctrine To This Case

In their motion for abstention, Defendants argued that a ruling on the Village's action for injunctive relief, "will have *res judicata* effect indicating whether or not the Village's inspections were a justified exercise of police powers motivated by concerns for public safety, welfare and preserving the integrity of Village Code Provisions." *Motion* at 9. It is settled law that, "a state court judgment must be given the same *res judicata* effect in federal court that it would be given in the courts of the rendering state." *Jones v.*

*City of Alton, Illinois*, 757 F.2d 878, 883 (7th Cir. 1985). Under Illinois law, in order for *res judicata* to apply to a federal court proceeding, the prior state court decision must: (1) have reached a final judgment on the merits; (2) involve the same parties or their privies as the current claims; and (3) constitute the same cause of action as the current claims. *Garcia v. Village of Mount Prospect*, 360 F.3d 630, 635 (7th Cir. 2004).

In *Garcia*, the Seventh Circuit reviewed a District Court decision dismissing claims of retaliation and employment discrimination, and affirmed on *res judicata* grounds. Plaintiff alleged that he was denied duty-related disability benefits by the Mount Prospect Police Pension Board ("Board") in retaliation for having provided testimony in an employment discrimination lawsuit successfully brought against the Village Police Department. *Garcia v. Village of Mount Prospect*, 360 F.3d at 632-33. Plaintiff filed a complaint for administrative review of the Board's decision in the Circuit Court of Cook County. The Circuit Court affirmed the Board's decision. During the appeal of the Board decision, plaintiff filed his federal court complaint.

The *Garcia* court determined that dismissal of the complaint was warranted after considering the same party and the same action elements of the *res judicata* doctrine. With regard to "same party" the Court concluded that, "case law and common sense support a finding of privity between the Village and the Board. In effect, the Board is an agent of the Village, and the Village, therefore, is in privity with the Board." *Garcia v. Village of Mount Prospect*, 360 F.3d at 636. Turning to the "same party" requirement, the Court used the "transactional approach" in its analysis which indicates that, "the assertion of different kinds of theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief . . . this approach views

claims in factual terms, focusing only on the bounds of the transaction at issue, disregarding the number of substantive theories, the variant forms of relief flowing from those theories, and the variations in evidence needed to support the theories." *Id*. at 637. *Res judicata* was proper because, "both the administrative appeal and the instant lawsuit question the basis – either proper or improper – of the Board's denial of Garcia's disability benefits. The 'core of operative facts' is identical for both causes of action: the acts of the Board and the Village Police Department leading up to and including the Board's decision to deny the benefits." *Id*. at 638. The Court concluded that the Circuit Court proceeding and the claims in federal court were the same action for purposes of *res judicata*, "[t]he administrative appeal challenged the board's decision, the motives behind which are the basis for the instant lawsuit. In sum, as the EEOC charge and the district court complaint make plain, the administrative appeal and the cause of action in federal court arise from the same core of operative facts." *Id*. at 638-39.

The analysis set forth in *Garcia* indicates that *res judicata* applies in the instant matter as Defendants indicated in their motion requesting abstention.[2] While it is true that the injunctive relief and condemnation matters involve only the Village as a party, the individual Defendants in the RICO and civil rights actions are either Village elected officials (Wilks) or employees and, as such, they are agents for "single party" purposes. The "core of operative facts" – the motives behind the actions Defendants took relative to the Subject Property – are the same in the federal court and state court lawsuits. This Court would be justified in finding that the decisions rendered in the state court proceedings could have *res judicata* consequences for the RICO and civil rights claims.

---

[2] Here, as in *Garcia*, the "final judgment" element would not be in dispute.

Consequently, the Circuit Court matters could result in the resolution of issues fundamental to the instant case.

## IV.    Extraordinary Conditions Exist To Support Abstention By This Court

Plaintiffs argue in their response that the balance of factors that a District Court may consider in deciding whether exceptional circumstances justify an abstention weigh heavily against applying the *Colorado River* doctrine in this matter. *Response* at 10. In fact, a consideration of the most salient factors presented by this case supports abstention.

Plaintiffs are correct that in an exceptional circumstances analysis no set number of factors must be demonstrated to tilt the balance in favor of abstention. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927 (1983) ("the weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case.") The Seventh Circuit has affirmed District Court decisions to abstain under *Colorado River* when far fewer than the ten exceptional circumstances factors are cited by the trial judge. *See Tyrer v. City of South Beloit, Illinois,* 456 F.3d 744, 754-755 (7th Cir. 2006) (District Court decides to abstain when it determined that although the federal forum was not inconvenient and federal law provided the rule of decision, allowing the federal proceeding to continue would promote "piecemeal and duplicative litigation," the state court proceeding was much further along procedurally than the federal action, and the state court action would allow plaintiff to vindicate any violation of his federal rights); *Interstate Material Corporation v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988) (cites to two of the factors expressly listed in *Colorado River*: (1) the desirability of avoiding piecemeal litigation and (2) the order in which jurisdiction was obtained by the concurrent forums and two additional factors

identified in *Moses H. Cone Memorial Hospital* and subsequent cases: (1) the relative progress of the state and federal proceedings and (2) the vexatious or contrived nature of the federal claim). In this case, as Defendants indicated in their motion for abstention, at least four of the exceptional circumstances factors tip the balance in favor of this Court abstaining. Plaintiffs arguments do not effectively demonstrate the contrary.

The most significant factor weighing in favor of *Colorado River* abstention is the need to avoid piecemeal and duplicative litigation. Plaintiffs assert no threat of piecemeal litigation exists in this matter, "[a] judgment in either the state condemnation or the building code case would not resolve any issues in the instant case." *Response* at 11. This assertion is inaccurate. The Complaint presents a civil rights action for a taking of the Subject Property without just compensation. The condemnation litigation will be resolved in one of two ways. If Curtis defeats the condemnation complaint through his traverse and motion to dismiss, then no taking of the Subject Property will occur. Alternatively, judgment will be entered setting fair compensation for the Village taking title to Curtis' property. Either result resolves the civil rights action alleging a taking without just compensation.

Analysis of the RICO and equal protection claims demonstrates that Plaintiffs must prove the existence of illegal motives regarding Defendants' code enforcement actions at YOTI. The reasons for Defendants' inspections and enforcement of building, property maintenance, fire prevention and health code provisions will be at issue in the Circuit Court action for injunctive relief. Without abstention, the possibility exists that the Circuit Court could find Defendants' code enforcement actions were reasonable as a means to protect public health and safety; while Curtis is still arguing that the Village's

actions were a pretext for abusing its police powers in order to acquire the Subject Property on the cheap and to oust Curtis from the community. Abstention will allow this Court to avoid the possibility of an undesirable and contradictory conclusion.

Curtis suggests the fact that the Circuit Court condemnation and injunctive relief proceedings began prior to the federal court case does not truly weigh in favor of abstention because these state court matters have not progressed much beyond the instant lawsuit. *Response* at 12-13. This conclusion is flawed. The action for injunctive relief is ready for a hearing that will decide the reasonableness of Defendants' code enforcement actions at the Subject Property. The parties have engaged in the written discovery necessary to prepare for a hearing on Curtis' traverse and motion to dismiss the condemnation complaint. Given that the traverse potentially could resolve the eminent domain action, the condemnation litigation has progressed beyond the instant matter where this Court's assertion of jurisdiction is at issue. The order in which the state and federal courts obtained jurisdiction and the relative progress of the parallel proceedings weighs in favor of abstention.

Finally, Curtis cannot get around the fact that the instant matter represents an attempt to circumvent a state court (where matters were not going in their favor) for a possibly more sympathetic federal court forum. Plaintiffs initially chose to file RICO and civil rights claims in the Circuit Court of Cook County. The Circuit Court judge presiding over Plaintiffs' case issued rulings adverse to Plaintiffs, including granting the Village's motion to close down YOTI and a decision denying a motion to dismiss the Village's action for injunctive relief. Subsequently, Plaintiffs dismissed their RICO and civil rights actions out of the Circuit Court so they could litigate the same claims before

this Court. Plaintiffs seem to be engaged in the type of "gamesmanship" that the Seventh Circuit decried in *Tyrer v. City of South Beloit, Illinois* as threatening "the legitimacy of the court system in the eyes of the public." 476 F.3d at 756. For policy reasons pertaining to the integrity of the judicial system, this Court should respond to Plaintiffs' attempts at circumvention by applying *Colorado River* and abstaining from asserting its jurisdiction over the instant matter pending resolution of the Circuit Court proceedings.

**WHEREFORE,** for all the above-stated reasons, Defendants IRVANA WILKS, MICHAEL JANONIS, WILLIAM COONEY, WILLIAM SCHROEDER, ROBERT ROELS, FRANK KRUPA and the VILLAGE OF MOUNT PROSPECT respectfully request that this Honorable Court enter an order granting their motion for abstention and any further relief deemed just and fair.

　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　Irvana Wilks, Michael Janonis, William
　　　　　　　　　　　　　　　　　　　　Cooney, William Schroeder, Robert Roels,
　　　　　　　　　　　　　　　　　　　　Frank Krupa and the Village of Mt. Prospect

　　　　　　　　　　　　　　　　　　　　By:＿＿＿＿＿/s/Allen Wall＿＿＿＿＿＿

Everette M. Hill, Jr.
Lance C. Malina
Allen Wall
KLEIN, THORPE AND JENKINS, LTD.
20 North Wacker Drive, suite 1660
Chicago, Illinois 60606
(312) 984-6400