## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

TOD CURTIS, et al.,

      **Plaintiffs,**

      **v.**

IRVANA K. WILKS, et al.,

      **Defendants.**

**No. 08 C 3527**

**Magistrate Judge Mary M. Rowland**

## MEMORANDUM OPINION AND ORDER

Defendants move to bar Plaintiffs' proposed experts, William Rotolo and Kevin Chick, because (1) the District Court already ruled that they are not qualified; and (2) Rotolo's and Chick's opinions are unreliable or irrelevant in any event. (Dkt. 333 & 336). For the reasons stated below, the Court makes the following rulings:

### William Rotolo

- Defendants' Motion *In Limine* to Bar the Trial Testimony of William Rotolo [333] is DENIED as to the following opinions: (1) Defendants failed to comply with current practices regarding development and code enforcement; (2) Plaintiffs' potential return on investment, had they developed their property, would have been substantial.

- Defendants' Motion *In Limine* to Bar the Trial Testimony of William Rotolo [333] is GRANTED as to the following opinions: (1) Defendants engaged in selective code enforcement against Plaintiffs; (2) the Village Defendants and Oztekin were operating under an unwritten agreement to obtain Plaintiffs' property; and (3) the Village's appraisal of Plaintiffs' property was invalid.

### Kevin Chick

- Defendants' Motion *In Limine* to Bar Kevin Chick from Testifying as an Expert Witness at Trial [336] is GRANTED.

# I. PROCEEDURAL BACKGROUND

Plaintiffs Tod Curtis, First United Tryst Company, and Elto Restaurant, Inc. bring this action against the Village of Mount Prospect ("Village"), as well as associated individual defendants, alleging Defendants engaged in a pattern of racketeering activity to deprive Plaintiffs of their property and retaliated against Plaintiff Tod Curtis in violation of his First Amendment rights.

On July 24, 2009, Defendants filed a motion for summary judgment. In responding, Plaintiffs attached declarations from two proposed experts: William Rotolo and Kevin Chick. (Dkt. 153-3 and 153-4). On October 27, 2009, Defendant moved to strike the Rotolo and Chick declarations. (Dkt. 172). In ruling on the motions for summary judgment, the District Court (Judge Guzman) granted Defendants' motion to strike, finding that neither Rotolo nor Chick, based on their declarations, were qualified to provide the opinions offered. (Dkt. 185).

## A. Motion to Strike the Declaration of William Rotolo

According to his declaration, from 1975 to 1986, Rotolo worked in senior planning positions with the Village of Schaumberg and the Village of Wilmette. He has since worked in the private sector, helping developers get projects approved by various municipalities. During his time in private development, Rotolo has worked on a total of three projects with the Village of Mount Prospect. In his declaration, Rotolo opined that Defendants departed from their normal code enforcement practices when dealing with Plaintiffs' property. (Dkt. 153-2 at ¶ 11) ("In all of my years in dealing with municipal government, both as a business owner and code

enforcement manager, I have never experienced or have been otherwise informed of such overzealous behavior directed at a particular business owner."). Rotolo also opined that "the Village engaged in selective and vindictive enforcement of Village codes and regulations to harass Tod Curtis and to force him to sell his property." (Dkt. 153-3 at 5).

The District Court held that Rotolo was not qualified to opine about the current-day practices of the Village of Mount Prospect, because he "gained most, if not all, of his knowledge of the practices and usage of other suburban municipalities' planning practices two or three decades ago." (Dkt. 186 at 2). Regarding Rotolo's development experience in the private sector, Judge Guzman stated, "Plaintiffs have simply failed to connect the dots" between Rotolo's private sector experience and the opinions offered. The District Court also ruled that Rotolo's statements concerning the motives behind the individual Defendants' conduct were inherently inadmissible because they relied on speculation. (Dkt. 186 at 3 ("[N]either he nor anyone else is qualified to speculate as to another's intent.")).

## B. Motion to Strike Declaration of Kevin Chick

Chick's declaration indicated that he has been in the remodeling construction industry for over 30 years. He owns a company that builds homes, renovates buildings, and designs cabinetry. In his declaration, Chick opines that the excavation and construction of the Blues Bar caused damage to Plaintiffs' property. Judge Guzman held that Chick was not qualified to testify as an expert regarding the cause of any existing or impending structural damage to Plaintiffs' property

because he did not state that he had an engineering degree or any particular experience in analyzing the cause of structural damage. The District Court also held that Chick failed to provide the methodology he used to reach his opinion. (Dkt. 186 at 4 ("his *ipse dixit* conclusions are not sufficiently reliable").

## II. LEGAL STANDARD

Defendants now seek to bar Rotolo and Chick from testifying at trial. They argue that the District Court's rulings on Chick and Rotolo's qualifications at the summary judgment stage constitute law of the case, which now mandates exclusion of those experts' trial testimony. In the alternative, Defendants argue that neither witness meets the reliability standard under *Daubert*. Plaintiffs respond that (1) Defendant's "law of the case" argument was already rejected by Judge Lee when he denied Defendants' motions to quash, and (2) any deficiencies in Rotolo's and Chick's declarations have since been cured by supplemental disclosures and deposition testimony.

## A. Law of the Case Doctrine

Before addressing the merits of Defendants' law of the case argument, the Court notes Defendants' failure to bring certain relevant facts to the Court's attention in their Motion *In Limine* to Bar the Trial Testimony of William Rotolo. (Dkt. 333). Defendants assert that the Court must exclude Rotolo's testimony because Judge Guzman struck Rotolo's declaration during summary judgment proceedings. (*Id.* at 4) ("[A]bsent compelling reasons, a ruling made at one stage of a litigation governs subsequent proceedings even if the case is transferred to another judge, or even

another coordinate court."). Defendants fail to mention, however, that Judge Guzman addressed that argument directly during a hearing on March 6, 2012:

> The rulings I previously made were with respect to affidavits submitted on behalf of these experts in the motion for summary judgment. . . . I didn't know what these people are going to testify to at trial. Maybe it will be exactly the same thing in the affidavits, in which case, most likely, the rulings I made with respect to those affidavits will apply to their trial testimony as well and they will not be allowed to testify. But, I don't know that to be true. Nor do I know if the affidavits they presented establish all of their credentials, experience or other qualifications. They may have others that weren't in those affidavits.

(Dkt. 373-1 at 11).

In addition, a July 19, 2012 Order by Judge Lee held that Judge Guzman's ruling on Rotolo's declaration *does not* bar his testimony at trial:

> Although defendants aver that the Court's striking Rotolo's and Chick's affidavits from the summary judgment record was tantamount to barring their expert testimony at trial, the Court disagrees. It is yet unknown precisely to what Rotolo and Chick will attest at trial and whether they qualify as experts as to such matters.

(Dkt. 310). In arguing that Judge Guzman's ruling on the summary judgment declaration constitutes law of the case, Defendants should have informed the Court of the subsequent proceedings as detailed above. Defendants' failure to do so wasted judicial time and resources.

Moving on to the merits, the Court agrees with Defendants that, if Plaintiffs offer the same expert opinions as those submitted at the summary judgment stage with the same deficiencies, those opinions will be governed by the law of the case. As the District Court twice indicated, however, Plaintiffs' experts may offer opinion testimony at trial if they cure the deficiencies that led Judge Guzman to strike their

summary judgment declarations. Thus, the law of the case doctrine bars Rotolo's and Chick's opinions to the extent (1) that their proposed opinions at trial are materially the same as those offered in their summary judgment declarations, and (2) Plaintiffs have not remedied—through deposition testimony—the lack of qualifications, reliability, or methodology identified in Judge Guzman's order.

## B. The Law Governing the Admissibility of Expert Opinion Testimony

In addition to the law of the case, of course, the admission of expert testimony is governed by Federal Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), interpreted this rule to require that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589.

In analyzing the reliability of proposed expert testimony, the role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions. *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999). An expert may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. While "extensive academic and practical expertise" in an area is certainly sufficient to qualify a potential witness as an expert, *Bryant v. City of Chicago,* 200 F.3d 1092, 1098 (7th Cir. 2000), "Rule 702 specifically contemplates the admission of testimony

by experts whose knowledge is based on experience. *Walker v. Soo Line R.R.,* 208 F.3d 581, 591 (7th Cir. 2000); *see Kumho,* 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

## III. DISCUSSION

### A. Proposed opinion testimony of William Rotolo

#### 1. Rotolo's opinion that Defendants failed to comply with current practices regarding development and code enforcement

Judge Guzman found Rotolo was not qualified to testify about the current-day practices of the Village of Mount Prospect in terms of Code Enforcement and redevelopment project approval because he had not worked in municipal planning for the past 24 years. (Dkt. 186 at 2). However, Rotolo's deposition testimony revealed that his time in private practice was closely related to municipal code enforcement. In 1986, Rotolo left a senior planning position with the Village of Wilmette to join the Lexington Development Corporation. There, he worked as a project manager, responsible for getting development projects approved by municipalities. (Dkt. 373-2 at 9). He worked on two projects in the Village of Mount Prospect, requiring him to learn the Village's building codes, development policies, and enforcement procedures. (Dkt. 373-2 at 10). He was required to meet with and make presentations to the Village Board, and he was responsible for negotiating the ultimate approval of those projects. (*Id.*) While working for Lexington, Rotolo was promoted to vice president, executive vice president, and eventually became a part owner. (Dkt. 373-2 at 11). In 1996, Rotolo left Lexington and formed his own

development business, Insignia Development Corporation. (Dkt. 373-2 at 12). There, he worked on two more projects with the Village of Mount Prospect in 1998 and again from 1999 to 2002. (Dkt. 373-2 at 12–14). He has also worked on an additional 20 projects in other northwest Chicago suburbs. (Dkt. 373-2 at 15).

The Court finds that Rotolo is qualified to opine that Defendants failed to comply with both the Village of Mount Prospect's and the Northwest Municipal Conference's current practices regarding development approval and code enforcement in its dealings with Plaintiffs.

## 2. Rotolo's opinion that Defendants engaged in selective code enforcement against Plaintiffs

Judge Guzman ruled that Rotolo could not testify that Defendants "engaged in selective and vindictive enforcement of Village codes and regulations to harass Tod Curtis and to force him to sell his property," because no one is qualified to speculate as to another's intent. (Dkt. 186 at 3). Since that ruling, Plaintiffs have toned down Rotolo's opinion somewhat: instead of proposing that he testify about "vindictive" enforcement meant to "harass" Curtis, Plaintiffs propose that Rotolo be allowed to testify that Defendants' enforcement was "selective." Despite that semantic adjustment, Judge Guzman's reasoning still stands. Testimony about Defendants' selective code enforcement would necessarily convey that the enforcement was based on improper motives. While Rotolo may  testify that Defendants failed to comply with its current practices regarding development and code enforcement, he cannot go so far as to say it was "selective," because that would go to Defendants' mental state. *Sommerfield v. City of Chicago,* 254 F.R.D. 317, 335 (N.D. Ill. 2008)

("Just as judges have no way of crawling into peoples' minds, neither does [the proposed expert]") (internal citation and quotation omitted); *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991) (holding inadmissible testimony of an IRS agent regarding the purpose of a transaction; "[m]uch of [his] testimony consists of nothing more than drawing inferences from the evidence that he was no more qualified than the jury to draw.").

Accordingly, the Court excludes Rotolo's opinion that Defendants engaged in selective code enforcement against Plaintiffs.

### 3. Rotolo's opinion that the Village Defendants and Oztekin were operating under an unwritten agreement to obtain Plaintiffs' property

Likewise, Rotolo cannot testify that Defendants were operating under an "unwritten agreement" to obtain Plaintiff's property. That opinion would require an inference about Defendants' mental state, which Rotolo is no more qualified to make than the jury.

### 4. Rotolo's opinion regarding Plaintiffs' potential return on investment had they developed their property

Defendants also seek to bar Rotolo's opinion regarding Plaintiffs' potential return on investment if they developed their property.[1] In his report, Rotolo opined that

> [h]ad the Village allowed Mr. Curtis to move forward with a condominium building with ground floor retail during the 2005–2006 period when Mr. Curtis was pursuing such a development, . . . the potential profit that Mr. Curtis would have realized … would have been substantial. The market for condominiums in suburban

---

[1] This opinion was not at issue in Defendants' October 27, 2009 motion to strike.

downturns was at its peak at this time. The housing development industry was realizing record breaking returns on investment, and sales of condominiums like those contemplated in Mr. Curtis's development plans were realizing record breaking sales paces.

This height[en]ed market for condos in the northwest suburbs continued through the end of 2006. It can be argued that Mr. Curtis could have realized a return on his investment of well over 30% . . . . Since the Fall of 2007, the real estate development industry nationwide has been in dire condition. However, even in these difficult times for real estate development, there are a few select development types that could be profitable for a landowner in downtown Mount Prospect.

(Dkt. 373-1 at ¶¶ 46–48).

Defendants do not contest Rotolo's expert qualifications to opine on these issues. Instead, Defendants contend that by the time Curtis submitted his Gateway Centre Redevelopment Proposal to the Village in March 2008, Rotolo's calculations based on the 2005–2006 economy were no longer reliable. (Dkt. 333 at 10–13). Defendants argue that Rotolo's pro-forma projections are not accurate because "[e]very person in America knows that the development economy tanked in 2007!" (*Id.* at 11) (exclamation in original). The Court is not persuaded.

Curtis made his *initial* Gateway Centre Redevelopment Proposal to the Village in October 2006. (Stipulations and Uncontested Facts ¶¶ 78–79). Rotolo's assessments are reliable for this time frame. Even focusing on Curtis's second proposal submitted in March 2008, Defendants provide no support, expert or otherwise, for their assumption that Rotolo's opinion is unreliable merely because the "development economy tanked in 2007!" Indeed, in his deposition, Rotolo explained that while 2007 was a rough year for the real estate market, it rebounded in 2008:

> Starting at the end of 2008, rents started rising again and occupancy started going up and they are now at an all-time high, almost. They're very strong because people are not buying houses, they're renting, and they're not buying because they no longer qualify or they don't have the income or a big one is they don't have a down payment.

(Dkt. 373-3 at 137). Rotolo testified that while rents dropped 10–20% in 2007, the rental market recouped half of its loss during 2008 and by 2009 it had recovered to its 2006 height. (*Id.* at 139–40). Rotolo also testified that the rental market continued to rise after 2009 and by 2012 was higher than its 2006 peak and was "probably the strongest rental market we've seen in 20 some years." (*Id.* at 140). Rotolo was specifically questioned about the impact of the 2007 economic downturn on this opinion and responded that it did not make him any less confident in his original projections. (*Id.* at 105–40).

In sum, the Court rejects Defendants' argument that the data underlying Rotolo's opinion is so old that it renders his opinion unreliable. Rotolo may testify about Plaintiffs' potential return on investment had they developed their property. Defendants are free to cross-examine him on the temporal scope of the data on which his opinions are based. *Richman v. Sheahan*, 415 F. Supp. 2d 929, 949 (N.D. Ill. 2006) ("[T]he jury is provided with independent means by which it can reach its own conclusion or give proper weight to the expert testimony.").

### 5. Rotolo's opinion regarding the Village of Mount Prospect's appraisal of Plaintiffs' property

Defendants argue that Rotolo is not qualified to testify about the validity of the Village's appraisal of the Plaintiffs' property. Rotolo opines that John Mundie, the appraiser retained by the Defendants to appraise Plaintiffs' property "used

unscrupulous appraisal techniques" akin to "the corrupt practices of highly political governmental entities such as the State of Illinois under Governor's Ryan and Blagojevich, or in the wards of the City of Chicago." (Dkt. 333-2 at ¶ 43-44). Defendants also assert that Rotolo's opinion is not relevant because Judge Guzman already found Mundi's appraisal to be a proper appraisal. (Dkt. 333 at 14).

Rotolo's opinion is not appropriate under Fed. R. Evid. 702. It offers no assistance to the jury and is based on no methodology. It is an inflammatory attack on the Mundie appraisal, an appraisal the District Judge has already found to have been properly conducted:

> Mundie's appraisal … compared plaintiffs' property to two properties in Mount Prospect, one of with was located a few blocks north of plaintiffs' property, in its comparable improved sales analysis. … Because the appraisal clearly compares the subject property to the value of properties in Mount Prospect which increased the price per square foot that the Village ultimately offered, no reasonable jury could find that the appraisal solely relied on properties that were not in proximity to plaintiffs' property. … In sum, plaintiffs have failed to create a genuine issue of fact as to whether the Village's offer was unreasonable or below fair market value.

*Id.* at 32-33. Defendants' motion to preclude this testimony is granted.

## B. Proposed opinion testimony of Kevin Chick regarding the case of the damage to and the cost to repair Plaintiffs' property.

Defendants object to the proposed opinion testimony of Kevin Chick. Although Plaintiffs do not describe the precise contours of Chick's proposed testimony, it is clear that he would at least testify that the excavation and construction of the Blues Bar, beginning October 2006, caused significant damage to Plaintiffs' property which will require Plaintiffs to spend approximately $965,000 to repair.

In the summary judgment proceedings, Judge Guzman ruled that Chick was unqualified to testify as an expert regarding the cause of any damage or the cost of remediating the same, because (1) he "does not have an engineering degree or particular experience in analyzing the cause of structural damage," and (2) "he does not provide the methodology he used to reach his opinion." (Dkt. 186 at 4).

The Court has reviewed Chick's subsequent deposition testimony to determine whether Plaintiffs have cured the errors identified in Judge Guzman's opinion. Chick testified that he is a long-time associate of Plaintiff Tod Curtis. Chick worked for Curtis from 1974 to 1976 as an assistant manager and bartender in one of Curtis's restaurants. (Dkt. 372-1 at 29). Chick then moved to Minnesota where he worked for his father in the construction business (*Id.*) In about 1979, Chick moved back to Illinois, and soon thereafter started his own construction business. He spent about a year, again working for Curtis, remodeling Ye Olde Town Inn and the rest of the building at 6-18 West Busse. (*Id.* at 30–31). Throughout the course of his career, Chick has worked on a number of renovation projects, some of which involved assessing structural integrity and repairing structural damage. (*Id.* at 34–35). But, as Judge Guzman noted, Plaintiffs have failed to establish that Chick has experience in determining the *cause* of structural damage. (Dkt. 186 at 4) (emphasis added). It is not clear to the Court that someone experienced in fixing structural damage has, by extension, expertise at determining the cause of that damage. That deficiency was clearly identified in Judge Guzman's ruling, and Plaintiffs were unable to remedy it through Chick's deposition testimony.

Further, Chick still fails to adequately describe his methods. For example, during his deposition, Chick was asked "what methods did you use to assess the structural integrity of the building?" to which, he responded "My general observation and experience in renovations." (Dkt. 336-3 at 6). That answer does not afford Defendants with information sufficient to challenge Chick's opinion. Rule 702 requires that the expert explain the "methodologies and principles" that support his opinion; he cannot simply assert a "bottom line." *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010); *see also United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009) (rejecting expert testimony where expert "in essence, told the jury nothing more than, 'I am familiar with the definition of child pornography, and this meets that definition because I said so'").

Because Chick cannot opine that construction of the Blues Bar caused the damage to Plaintiffs' property, he also cannot opine as to the cost of remediating damages caused by construction of the Blues Bar. As Judge Guzman explained, Chick's opinion about the cost of repairing Plaintiffs' property is not relevant unless he can isolate what specific repairs were made necessary by the Blues Bar construction, apart from repairs that may have been necessary or desirable for other reasons (such as to address normal deterioration). Judge Guzman wrote:

> [Chick's] cost estimate in his declarations and report does not separate the cost of replacing or repairing missing or damaged bricks or parapet caps from the cost of demolishing and rebuilding the entire wall. The presumption underlying the estimate is that all of the categorized repairs are necessary to restore the structural integrity of plaintiffs' property. However, as stated above, Chick is not qualified as an expert to testify that all of his suggested repairs are necessary to make the building structurally sound.

(Dkt. 186 at 5). That reasoning still stands.

Accordingly, Chick is not qualified to opine (1) that the construction of the Blues Bar caused damage to Plaintiffs' property; or (2) the cost of repairs necessary due to such damage.

## IV. CONCLUSION

For the reasons described above, Defendants' Motion *In Limine* to Bar the Trial Testimony of William Rotolo [333] is **GRANTED IN PART** and **DENIED IN PART**; Defendants' Motion *In Limine* to Bar Kevin Chick from Testifying as an Expert Witness at Trial [336] is **GRANTED**.

E N T E R:

Dated: March 26, 2013

_____
MARY M. ROWLAND
United States Magistrate Judge